**CIVIL SERVICE COMMISSION, the City and County of Denver, Petitioner,**

v.

**John E. PINDER, Respondent.**

**No. 90SC226.**

Supreme Court of Colorado, En Banc.

June 10, 1991.

---

Patricia L. Wells, City Atty., Darlene M. Ebert, Mary Ann Coyne, Asst. City Attys., Denver, for petitioner.

Shaver & Licht, John H. Licht, Denver, for respondent.

Chief Justice ROVIRA delivered the Opinion of the Court.

We granted certiorari to review the opinion of the Colorado Court of Appeals in *Civil Service Commission v. Pinder*, 795 P.2d 1368 (Colo.App.1990), reversing the trial court and ordering the release of a promotional examination to the respondent John E. Pinder. The trial court granted the Denver Civil Service Commission's (the Commission) motion for summary judgment based upon section 24–72–204(6), 10B C.R.S. (1988), which allows a court to restrict access to public records where substantial injury to the public interest would result. The court of appeals held that section 24–72–204(2)(a)(II) specifically allows Pinder, as a party in interest, to inspect the examination, notwithstanding section 24–72–204(6). We reverse the court of appeals.

I

The decision in this case is dependent on the interpretation of sections 24–72–204(2)(a)(II) and 24–72–204(6), legislation commonly referred to as the Colorado Open Records Act (the Act). The Act was passed in 1968 following a one-year study by a special committee of the Colorado Legislative Council. *Denver Publishing*

*Co. v. Dreyfus,* 184 Colo. 288, 290, 520 P.2d 104, 105 (1974); *see also* Colorado Legislative Council, Research Publication No. 126, *Open Public Records for Colorado* (1967).

The controversy arose in 1987 when Pinder, a Denver police officer, took the Denver Civil Service examination for promotion to police sergeant. The examination had been specially developed by a private testing and consulting firm[1] to qualify as a nondiscriminatory promotion examination. The Commission had been sued by prior applicants on the basis that other less carefully developed examinations had been unfairly biased against minorities and women. As a result of the suit, the Commission was under a federal court order to develop and administer an examination that would prevent such disparate impact. The Commission had to spend $82,000[2] in order to procure an examination complying with the federal court order. The Commission obtained the $82,000 from a special appropriation of the Denver City Council.

Pinder's score on the examination was too low for him to be eligible for promotion to police sergeant. He then sought to inspect the examination in order to enable him to prepare for the next examination.[3] The Commission denied Pinder's request based on the fact that the examination had been specially developed at a high cost and it had no funds in its current budget for the development of another examination. The Commission reasoned that since it was financially necessary to reuse the examination Pinder had taken, the confidentiality of the examination had to be maintained. In addition, the Commission reasoned that the competitive nature of the examination

would be diminished and certain applicants, such as Pinder, would have an unfair advantage if given the opportunity to review the examination prior to its administration.

The Commission sought a court order pursuant to section 24–72–204(6) to restrict Pinder's access to the examination. It moved for summary judgment, arguing that section 24–72–204(6) applied to give the court discretion to restrict access to public records where substantial injury to the public interest would result. The Commission presented evidence in the form of affidavits showing the substantial injury that would result to the public interest if the examination were released. Pinder also moved for an entry of summary judgment, arguing that disclosure was required under section 24–72–204(2)(a)(II), but neither disputing the Commission's affidavits nor presenting evidence of a need to inspect the examination beyond the desire to improve his score. The trial court granted the Commission's motion, finding that although the information would otherwise be available to Pinder based on section 24–72–204(2)(a)(II), the disclosure would cause substantial injury to the public interest and thus could be restricted under section 24–72–204(6).

The court of appeals reversed that decision, stating that section 24–72–204(2)(a)(II) gave Pinder the right to review the information unrestricted by section 24–72–204(6). The court of appeals held that section 24–72–204(6) did not apply to information available for inspection by a person in interest,[4] rather it applied only to information available for inspection by the public.

---

1. The chosen consulting firm had substantial experience in the field of personnel testing for public-safety positions and served as a consultant to many cities in the development of such examinations. The firm conducted an extensive job analysis, a knowledge analysis, a test plan development, test construction, item review, content validity analysis, and spent several hundred hours of interviewing to prepare the examination.

2. Approximately $65,000 of this amount is attributable to the development of the examination, as opposed to the administration of the test and development of study materials for the applicants.

3. Prior to the examination, the Commission disseminated extensive study materials that had been prepared by the private consulting firm that had developed the test to help all applicants prepare for the examination.

4. Person in interest is defined in section 24–72–202(4) as:

   the person who is the subject of a record or any representative designated by said person; except that, if the subject of the record is under legal disability, "person in interest" means and includes his parent or duly appointed legal representative.

## II

Section 24–72–204(2)(a)(II) provides:

The custodian may deny the right of inspection of the following records, unless otherwise provided by law, on the ground that disclosure to the applicant would be contrary to the public interest: ... (II) Test questions, scoring keys, and other examination data pertaining to administration of a licensing examination, examination for employment, or academic examination; except that written promotional examinations and the scores or results thereof conducted pursuant to the state personnel system or any similar system shall be available for inspection, but not copying or reproduction, by the person in interest after the conducting and grading of any such examination....

Section 24–72–204(6) provides:

If, in the opinion of the official custodian of *any public record,* disclosure of the contents of said record would do substantial injury to the public interest, *notwithstanding the fact that said record might otherwise be available to public inspection,* he may apply to the district court of the district in which such record is located for an order permitting him to restrict such disclosure. Hearing on such application shall be held at the earliest practical time. After hearing, the court may issue such an order upon a finding that disclosure would cause substantial injury to the public interest. In such action the burden of proof shall be on the custodian.

(Emphasis added.)

■ Our primary task in interpreting a statute is to give it a construction and interpretation that will render it effective in accomplishing the purpose for which it was enacted. *See, e.g., People v. Guenther,* 740 P.2d 971 (Colo.1987); *Zaba v. Motor Vehicle Div.,* 183 Colo. 335, 516 P.2d 634 (1973).

■ The intent of the legislature to restrict access to information where substantial harm to the public interest would occur is evident from section 24–72–204(6) itself. Section 24–72–204(6) provides that the court may restrict disclosure of a record "notwithstanding the fact that said record might otherwise be available for public inspection." A plain reading of the language indicates an intent to protect public records against disclosure where harm to the public interest would result, although the records might be accessible under other provisions of the Act.

Section 24–72–204(2)(a)(II) gives to Pinder, as a person in interest, the right to inspect a promotional examination and the results of his examination. However, section 24–72–204(6) allows a court to restrict access to public records, although they might be accessible under another provision, where it finds that substantial injury to the public interest would occur. *See Martinelli v. District Court,* 199 Colo. 163, 177, 612 P.2d 1083, 1093 (1980) (the legislative intent is that "a court should consider and weigh whether disclosure would be contrary to the public interest"); *Denver Publishing Co. v. Dreyfus,* 184 Colo. 288, 294, 520 P.2d 104, 107 (1974) ("the custodian of a record may apply to the district court to prevent disclosure of an otherwise unexempted record when he feels that disclosure would do substantial injury to the public interest").

The court of appeals interpreted the language "notwithstanding the fact that said record might otherwise be available to public inspection" in section 24–72–204(6) as inapplicable to the information that Pinder sought because section 24–72–204(2)(a)(II) allows access to that information by a person in interest, not necessarily the general public. This is an overly technical analysis, contrary to the intent of the legislature. The Legislative Council to the Colorado General Assembly originally recommended a provision restricting disclosure of any test question "prior to the administration of the examination," noting that denying access to certain test questions was necessary, "since premature disclosure of such information would defeat the purpose of the examination." Colorado Legislative Council, Research Publication No. 126, *Open Public Records for Colorado* xvi (1967). The legislature clearly intended to prevent premature disclosure of examina-

tion questions, but did not foresee these circumstances where one examination would be reused and premature disclosure would result despite the fact that the examination would already have been administered and graded. "To the extent that these situations can be identified in advance, it may be advisable for the legislature to decide what is contrary or injurious to the public interest.... If there is need for additional determinations—if the legislature is unable to identify every possible situation where disclosure would be contrary to the public interest—the courts with their experience along these lines might be the logical place for decision." Colorado Legislative Counsel, Research Publication No. 126, *Open Public Records for Colorado* 5 (1967). This is one such situation where we are called upon to give effect to the legislature's intent to prevent disclosure of a public record where substantial harm to the public interest would occur.

■ The construction and interpretation that will render section 24–72–204(6) effective in accomplishing the purpose for which it was enacted is to allow the district court to restrict access to public records where substantial injury to the public interest would result, notwithstanding the fact that said record might otherwise be available for inspection by a party in interest or by the general public. The legislature intended to give "the official custodian the opportunity to request an order permitting him to restrict disclosure of a *public record*." (Emphasis added.) Colorado Legislative Counsel, Research Publication # 126, *Open Public Records for Colorado* at xviii (1967). The record to which Pinder seeks access is indisputably a "public record" notwithstanding its availability to a party in interest. There is no language in the statutes indicating that public records are to be differentiated, for the purposes of section 24–72–204(6), based upon their availability to the general public or to a person in interest. Public records are defined in section 24–72–202(6) as:

> [A]ll writings made, maintained, or kept by the state or any agency, institution or political subdivision thereof for use in the

exercise of functions required or authorized by law or administrative rule or involving the receipt or expenditure of public funds.

(Emphasis added.)

"The definition of 'public records' is especially important because it determines the general reach of the bill." Colorado Legislative Counsel, Research Publication No. 126, *Open Public Records for Colorado* at xiii (1967). Thus, the district court could restrict access to the public record that Pinder sought if it properly found that substantial harm to the public interest would occur.

### III

■ Under C.R.C.P. 56(c), summary judgment is proper only when the pleadings, affidavits, depositions, or admissions show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party. C.R.C.P. 56(c); *Continental Airlines, Inc. v. Keenan,* 731 P.2d 708 (Colo.1987). The party moving for summary judgment may satisfy this burden by demonstrating that there is an absence of evidence in the record to support the nonmoving party's case. *Id.* Once the moving party has met the initial burden of production, the burden shifts to the nonmoving party to establish that there is a triable issue of fact. *Id.*

■ An affirmative showing of specific facts, uncontradicted by any counter affidavits, leaves a trial court with no alternative but to conclude that no genuine issue of material fact exists. *Terrell v. Walter E. Heller & Co.,* 165 Colo. 463, 467, 439 P.2d 989, 991 (1968). The Commission presented evidence in the form of affidavits attesting to its intent to reuse the examination; the lack of funds to develop a new examination; the need to develop a nondiscriminatory examination because of the federal court order; the competitive nature of the examination and the need for confidentiality; the unfairness that would result

if the examination were released to a limited number of those taking the examination; and the availability of materials from which Pinder and all applicants could study to improve test results. Pinder did not present any factual evidence disputing the affidavits, rather he argued that disclosure was required under section 24–72–204(2)(a)(II). Thus, the Commission was entitled to judgment as a matter of law because Pinder presented no evidence disputing the factual issue of whether substantial injury to the public interest would result if the information were not restricted.

Accordingly, the decision of the court of appeals is reversed and the case is remanded to that court for further proceedings consistent with this opinion.