David E. GRAVEN, Petitioner,

v.

VAIL ASSOCIATES, INC., Respondent.

No. 94SC416.

Supreme Court of Colorado,
En Banc.

Dec. 18, 1995.

As Modified on Denial of Rehearing
Jan. 16, 1996.

Kenneth Dresner, Colorado Springs, for Petitioner.

White & Steele, P.C., John M. Lebsack, Glendon L. Laird, Peter W. Rietz, Monty L. Barnett, Denver, for Respondent.

White & Steele, P.C., Peter W. Rietz, Denver, for Amicus Curiae Colorado Ski Country USA.

Melanie Dummer Mills, Denver, for Amicus Curiae Colorado Ski Country USA.

Justice LOHR delivered the Opinion of the Court.

This is a negligence action brought by the plaintiff, David E. Graven, for injuries suffered as a result of a skiing accident at a ski area operated by the defendant, Vail Associates, Inc. The district court granted summary judgment for the defendant, based on its ruling that the plaintiff's claims were barred by the provisions of the Ski Safety Act of 1979, §§ 33–44–101 to –114, 14 C.R.S. (1995). The Colorado Court of Appeals affirmed, holding that as a matter of law the precipice or ravine down which the plaintiff slid during the accident that resulted in his injuries was a "variation in steepness or terrain" that falls within the definition of "inherent dangers and risks of skiing" in section 33–44–103(3.5), and, therefore, was not required to be marked with a warning sign by the defendant under section 33–44–107(2)(d) and was precluded by section 33–44–112 from providing a basis for the plaintiff's claim.

*Graven v. Vail Assocs., Inc.*, 888 P.2d 310 (Colo.App.1994). We granted certiorari [1] and now reverse the judgment of the court of appeals and remand for further proceedings consistent with this opinion.

## I.

The plaintiff, David E. Graven, suffered extensive injuries as a result of a skiing accident that occurred at a ski area owned and operated by the defendant, Vail Associates, Inc. In his complaint, the plaintiff described himself as a "good skier" and alleged that on April 3, 1992, he was skiing with companions on a run unfamiliar to him and designated "more difficult." He "moved toward the far left side of the ski run and began stopping in order to wait for his Companions." As he "was coming to a complete stop, he came upon some slushy snow and lost his edges, fell down, slid several feet, then plunged forty-fifty feet down an unmarked steep ravine or precipice (Steep Ravine)." He was "unable to stop until colliding with a cluster of trees at the bottom of the Steep Ravine." Graven alleged that the steep ravine or precipice was "immediately next to" the ski run and that his injuries resulted from the defendant's failure to warn of a known dangerous condition.

The defendant moved for summary judgment, asserting that the plaintiff's claims are legally barred by the Ski Safety Act of 1979, §§ 33–44–101 to –114, 14 C.R.S. (1995) (Ski Safety Act). In support of that motion, the defendant submitted an affidavit of Lawrence D. Lane, who stated that he had personal knowledge of the "investigation concerning the injury of David Graven" and described the accident area as follows:

The tree about which David Graven injured himself is off of the ski trail known as "Prima." There is a snow-covered tran-

---

1. The issues presented for certiorari review are: 1. Whether the trial court erred in granting summary judgment in favor of Vail Associates regarding whether the ravine down which Graven fell was within the definition of "the inherent dangers and risks of skiing," § 33–44–103(3.5), 14 C.R.S. (1995), thereby barring his claim against Vail as a matter of law pursuant to section 33–44–112, 14 C.R.S. (1995).

2. Whether the trial court erred in granting summary judgment in favor of Vail on whether Graven's claims were barred by the Colorado Ski Safety Act, §§ 33–44–101 to –114, 14 C.R.S. (1995), because Graven failed to ski within his own ability.

sition which is off of the groomed portion of Prima which Graven went through before striking a tree in a naturally forested area. The area and the trees that David Graven complains about represent natural terrain features as well as a variation in terrain as a result of natural conditions, slope design and grooming operations.

The plaintiff then filed his own affidavit in which he described the accident area as follows:

> The area where I was injured was off the ski run known as "Lower Prima." The accident occurred on the side of the ski run, after I had left a transition area. When attempting to stop at the side of the ski run, I fell down a 40 to 50 foot precipice.

Notwithstanding the differences between the descriptions of the accident scene as set forth in the affidavits, the district court granted summary judgment for the defendant. The court held that the plaintiff's injuries were caused by "inherent dangers and risks of skiing," as defined by section 33–44–103(3.5); specifically, "variations in steepness or terrain, whether natural or as a result of slope design," "snow conditions as they exist or may change, such as . . . slush," "surface or subsurface conditions such as . . . trees," and "the failure of skiers to ski within their own abilities." *See* § 33–44–103(3.5). Accordingly, the district court held that the defendant had no duty to warn of such inherent dangers and risks of skiing under section 33–44–107(2)(d), and that the plaintiff's claims were barred by section 33–44–112, which prohibits claims against ski area operators for injuries resulting from such inherent dangers and risks.[2] The court of appeals

affirmed on the basis that the plaintiff's injuries were caused by inherent dangers and risks of skiing as represented by "[t]he slush, the trees, and the ravine." *Graven*, 888 P.2d at 315. The court found it unnecessary to reach the issue of whether the plaintiff failed to ski within his own abilities. *Id.* at 316.

## II.

### A.

This case is before us for review of a grant of summary judgment for the defendant. "Summary judgment is a drastic remedy and is never warranted except on a clear showing that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." C.R.C.P. 56(c); *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1339–40 (Colo.1988); *accord, e.g., Rael v. Taylor*, 876 P.2d 1210, 1228 (Colo.1994); *Civil Serv. Comm'n v. Pinder*, 812 P.2d 645, 649 (Colo.1991). The party moving for summary judgment has the burden of establishing the nonexistence of any genuine issue of material fact. *E.g., Pinder*, 812 P.2d at 649; *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo.1987). In determining the propriety of summary judgment, the nonmoving party is entitled to all favorable inferences that may reasonably be drawn from the undisputed facts, and all doubts as to whether a triable issue of fact exists must be resolved against the moving party. *E.g., Peterson v. Halsted*, 829 P.2d 373, 376 (Colo.1992); *Mancuso v. United Bank of Pueblo*, 818 P.2d 732, 736 (Colo. 1991). Bearing these principles in mind, we must first determine the scope of the protec-

---

**2.** Following the trial court's entry of summary judgment in favor of the defendant, the plaintiff moved the trial court to reconsider, alleging that the court "made an error in law concerning factual disputes presented by the parties." In further support of his claims, the plaintiff submitted several additional affidavits that were not before the court at the summary judgment proceeding.

The trial court declined to consider these additional affidavits, holding that the affidavits were intended to support the plaintiff's contention that the ravine or precipice was "visually obscured," an argument that the plaintiff had not raised in the initial summary judgment proceeding. On

appeal of the trial court's denial of the motion to reconsider, the court of appeals affirmed the trial court's ruling. *Graven*, 888 P.2d at 316. The court of appeals noted that "[a]ffidavits filed after the granting of a motion for summary judgment cannot be considered in a motion to reconsider, and a court need not entertain new theories on a motion to reconsider following the grant of summary judgment." *Id.* (citations omitted). Because this issue is not before us on certiorari, we must limit our review to the information considered by the trial court in granting summary judgment and decline to consider the additional affidavits submitted by the plaintiff.

tion against liability provided to ski area operators under the statutes at issue, and then determine if any genuine issue of material fact exists concerning whether the events upon which the plaintiff bases his claim are included within that scope.

### B.

A review of the statutory structure and relevant provisions of the Ski Safety Act will provide necessary background for evaluation of the propriety of summary judgment.

The Ski Safety Act was enacted in 1979 to establish reasonable safety standards and to define the relative rights and responsibilities of ski area operators and skiers. The legislative declaration provides:

> The general assembly hereby finds and declares that it is in the interest of the state of Colorado to establish reasonable safety standards for the operation of ski areas and for the skiers using them. Realizing the dangers that inhere in the sport of skiing, regardless of any and all reasonable safety measures which can be employed, the purpose of this article is to supplement the passenger tramway safety provisions of part 7 of article 5 of title 25, C.R.S.; to further define the legal respon-

sibilities of ski area operators and their agents and employees; to define the responsibilities of skiers using such ski areas; and to define the rights and liabilities existing between the skier and the ski area operator and between skiers.

§ 33–44–102, 14 C.R.S. (1995).

As originally enacted, the Ski Safety Act identified several specific duties owed to ski patrons by ski area operators, §§ 33–44–106 to –108, 14 C.R.S. (1984), and explicitly stated that any violation of these duties constituted negligence. § 33–44–104(2), 14 C.R.S. (1984). The legislative declaration noted generally that dangers inhere in the sport of skiing, but the original Act did not otherwise include any language pertaining to inherent dangers and risks of skiing.

The General Assembly amended the Ski Safety Act in 1990. These amendments were intended to clarify the law regarding the duties and responsibilities of skiers and ski area operators and to provide additional protection for ski area operators. *See* Ch. 256, sec. 1, Legislative Declaration, 1990 Colo. Sess. Laws 1540.[3] Consistent with the legislature's limited purposes, the 1990 amendments did not alter the duties of ski area operators specifically identified in the origi-

---

**3.** In full, the Legislative Declaration introducing the 1990 amendments that are now part of the Ski Safety Act provides:

> The general assembly hereby finds and declares that the sport of skiing is practiced by a large number of residents of Colorado and attracts a large number of nonresidents, significantly contributing to the economy of this state. The general assembly further finds that, despite the passage of the "Ski Safety Act of 1979", ski area operators of this state continue to be subjected to claims and litigation involving accidents which occur during the course of the sport of snow skiing, which claims and litigation and threat thereof unnecessarily increase Colorado ski area operators' costs. The general assembly further finds that such increased costs are due, in part, to confusion under the "Ski Safety Act of 1979" as to whether a skier accepts and assumes the dangers and risks inherent in the sport of skiing. It is the purpose of this act, therefore, to clarify the law in relation to skiing injuries and the dangers and risks inherent in that sport, and to provide that, as a matter of public policy, no person engaged in that sport shall recover from a ski area operator for injuries resulting from those inherent dangers and risks.

Ch. 256, sec. 1, Legislative Declaration, 1990 Colo. Sess. Laws 1540.

In remarks before the Senate State Affairs Committee concerning the 1990 amendments, the sponsor of the legislation, Senator Tilman Bishop, stated:

> What we are trying to do with this piece of legislation is not to reduce the responsibilities of the ski area operators. If you will look under the old act of 1979, you will find the section that deals with negligence and sets forth that a violation of any requirements of this article shall constitute negligence on the part of the person violating such....
>
> ....
>
> What we are trying to do in this piece of legislation is to clarify and to define what an inherent danger and risk of skiing constitutes.... I think it is a clarifying piece of legislation and I don't think it will preclude trial lawyers from finding areas where there is neglect and where suit should be made and proper awards awarded by the courts.

Hearings on S.B. 80 Before the Senate State Affairs Committee, 57th Gen. Assembly, 2d Reg. Sess., Jan. 30, 1990, Audio Tape No. 90–7.

nal Act, §§ 33–44–106 to –108, 14 C.R.S. (1995), or the legislative declaration articulating the purposes for which the Act was originally adopted. § 33–44–102, 14 C.R.S. (1995). The 1990 amendments did introduce and define the phrase "inherent dangers and risks of skiing," and added provisions excluding such dangers and risks from the ski area operators' duty to warn and from the causes of injuries upon which a claim can be based. Ch. 256, secs. 2, 3, 7, §§ 33–44–103(10), –107(2)(d), –112, 1990 Colo. Sess. Laws 1540, 1541, 1543.

As it exists today, the Ski Safety Act, which retained the title "Ski Safety Act of 1979," contains the following provision with respect to the negligence of ski area operators:

> A violation by a ski area operator of any requirement of this article ... shall, to the extent such violation causes injury to any person or damage to property, constitute negligence on the part of such operator.

§ 33–44–104(2), 14 C.R.S. (1995).

One such requirement is that ski area operators post warning signs with respect to danger areas. Specifically, section 33–44–107(1), 14 C.R.S. (1995), provides:

> Each ski area operator shall maintain a sign and marking system as set forth in this section.... All signs required by this section shall be maintained so as to be readable and recognizable under conditions of ordinary visibility.

The statute then provides for signs marking "danger areas," as part of the sign and marking system, as follows:

> Danger areas, designated by a red exclamation point inside a yellow triangle with a red band around the triangle and the word "Danger" printed beneath the emblem. *Danger areas do not include areas presenting inherent dangers and risks of skiing.*

§ 33–44–107(2)(d), 14 C.R.S. (1995) (emphasis added). Danger areas are not otherwise defined.

Another provision of the Ski Safety Act precludes skiers from making a claim for injury resulting from "the inherent dangers and risks of skiing." Section 33–44–112 provides:

> Notwithstanding any judicial decision or any other law or statute to the contrary ... no skier may make any claim against or recover from any ski area operator for injury resulting from any of the *inherent dangers and risks of skiing.*

(Emphasis added.)

A ski area operator, therefore, need not post warning signs concerning any danger areas that present "inherent dangers and risks of skiing," and no skier can recover from a ski area operator for injuries resulting from such dangers and risks.

In evaluating a claim for negligence against a ski area operator, the foregoing statutory provisions make it essential to determine whether the injuries upon which the claim is based resulted from "inherent dangers and risks of skiing." The General Assembly has specifically defined that term in section 33–44–103(3.5) of the Ski Safety Act:

> As used in this article, unless the context otherwise requires:
>
> ....
>
> (3.5) "Inherent dangers and risks of skiing" means those dangers or conditions which are an integral part of the sport of skiing, including [4] changing weather conditions; snow conditions as they exist or may change, such as ice, hard pack, powder, packed powder, wind pack, corn, crust, slush, cut-up snow, and machine-made snow; surface or subsurface conditions such as bare spots, forest growth, rocks, stumps, streambeds, and trees, or other natural objects, and collisions with such natural objects; impact with lift towers, signs, posts, fences or enclosures, hydrants, water pipes, other man-made structures and their components; variations in steepness or terrain, whether natural or as a result of slope design, snowmaking or

4. It is not necessary for the purposes of this opinion to determine definitively whether the list of dangers or risks that are inherent in the sport of skiing is exclusive. The word "include," how-ever, ordinarily signifies extension or enlargement and is not definitionally equivalent to the word "mean." *Lyman v. Town of Bow Mar*, 188 Colo. 216, 222, 533 P.2d 1129, 1133 (1975).

grooming operations, including but not limited to roads and catwalks or other terrain modifications; collisions with other skiers; and the failure of skiers to ski within their own abilities. The term "inherent dangers and risks of skiing" does not include the negligence of a ski area operator as set forth in section 33–44–104(2). Nothing in this section shall be construed to limit the liability of the ski area operator for injury caused by the use or operation of ski lifts.

We must determine the scope of the definition of "inherent dangers and risks of skiing" and the applicability of that term to the events and terrain conditions upon which the plaintiff bases his claim in order to assess the propriety of summary judgment in this case.

### C.

The definition of "inherent dangers and risks of skiing" is limited to "those dangers or conditions which are an integral part of the sport of skiing." It specifically includes "slush," "trees," and "variations in steepness or terrain, whether natural or as a result of slope design, snowmaking or grooming operations, including but not limited to roads and catwalks or other terrain modifications."

■ The defendant contends, and the court of appeals concluded, that because slush, terrain variations, and trees were implicated in the plaintiff's skiing accident, the accident necessarily resulted from "inherent dangers and risks of skiing." We disagree. Under the court of appeals' interpretation, any type of terrain variation wherever located falls within the definition of "inherent dangers and risks of skiing." However, the definitional language of section 33–44–103(3.5) strongly suggests that the variations in steepness or terrain described are those occurring within skiable areas and do not necessarily include those that might be encountered adjacent to the runs. This construction derives from the legislature's references to the source of the variations as "a result of slope design" and of "snowmaking or grooming operations," situations to be encountered within the areas intended for skiing. The complaint and the plaintiff's affida-

vit in the present case indicate that he slid down a steep ravine or precipice immediately next to the Prima ski run. The steep ravine or precipice, therefore, was a terrain feature outside the ski trail and was not as a matter of law included within the statutory description.

■ The prefatory language of the definition of "inherent dangers and risks of skiing" is also important in determining the nature of terrain variations included within that definition. This is so because when interpreting a statute, we must read and interpret the language "so as to give consistent, harmonious, and sensible effect to *all of its parts.*" *People v. Andrews,* 871 P.2d 1199, 1201 (Colo.1994) (emphasis added). The dangers and risks detailed in section 33–44–103(3.5) are intended to describe those "which are an integral part of the sport of skiing." The detailed listing of dangers and risks must be read with that intent and limitation in mind. *Accord Clover v. Snowbird Ski Resort,* 808 P.2d 1037, 1044–45 (Utah 1991) (distinguishing between risks on the basis of whether they are an integral part of the sport of skiing).

The legislative history of the 1990 amendments is also consistent with a more narrow construction of "inherent dangers and risks of skiing." The scope of the phrase "variations in steepness or terrain" was addressed in hearings before the House State Affairs Committee. Harris Sherman, representing amendment proponent Colorado Ski Country USA, explained "variations in steepness or terrain" as follows:

> Skiers encounter terrain changes, a trail turning to the right or left, or a trail dipping, and a skier going too fast out of control will fall, and instead of looking to himself will sue the ski areas.

Hearings on S.B. 80 Before the House State Affairs Committee, 57th Gen. Assembly, 2d Reg. Sess., March 13, 1990, Audio Tape No. 90–18. The 1990 amendments were not presented as including precipices or ravines located outside skiable areas within the scope of the phrase "variations in steepness or terrain." [5]

---

**5.** Based on the factual allegations in this case,  we have focused on the distinction between haz-

Skiing is a dangerous sport. Ordinary understanding tells us so, and the legislature has recognized that dangers inhere in the sport. *See* § 33–44–102. Not all dangers that may be encountered on the ski slopes, however, are inherent and integral to the sport, and this determination cannot always be made as a matter of law. In the present case, the plaintiff describes the terrain that precipitated his injuries as a steep ravine or precipice immediately next to the ski run. This description conjures up an image of a highly dangerous situation created by locating a ski run at the very edge of a steep dropoff. If such a hazardous situation presents an inherent risk of skiing that need not be marked as a danger area, the ski area operator's duty to warn under section 33–44–107(2)(d) is essentially meaningless. Therefore, we do not construe section 33–44–103(3.5) to include such a situation within the inherent dangers and risks of skiing as a matter of law.

■ The configuration of the terrain where the accident occurred, however, is a matter of serious dispute. The affidavit of Lawrence Lane, filed on behalf of the defendant, paints quite a different picture from that presented by the plaintiff. Lane describes the dropoff as a "snow-covered transition" off the groomed portion of the ski run and of a type commonly existing in the Vail ski area. This description suggests a relatively innocuous slope that may well be part of the inherent dangers and risks of skiing.

The record contains no photograph or other objective evidence that would assist in arriving at a correct understanding of the nature of the terrain where the accident occurred.

As a consequence of the conflicting descriptions of the accident area and the necessity to resolve that conflict in order to determine whether the plaintiff's injuries resulted from the inherent dangers and risks of skiing, we hold that a genuine issue of material fact exists. Summary judgment was therefore inappropriate on this issue.

### III.

■ Disputed questions of material fact also remain concerning the issue of proximate cause. The slush, the trees, the ravine or precipice, and the defendant's failure to post warning signs were all alleged to have contributed to the accident that led to the plaintiff's injuries. To establish causation, the plaintiff must prove that the defendant's conduct was a substantial contributing cause of the injury. *Rupert v. Clayton Brokerage Co.*, 737 P.2d 1106, 1112 (Colo.1987). Where an injury results from the combined negligence of the defendant and other factors, the injury is attributable to the defendant if the injury would not have occurred in the absence of the defendant's negligence. *See id.; Carlock v. Denver & Rio Grande R.R.*, 55 Colo. 146, 150, 133 P. 1103, 1105 (1913); *see also* Restatement (Second) of Torts §§ 431, 432(2) (1965). Where, as here, various factors are alleged to have contributed to the

ards located within ski runs and those outside of skiable areas. By this emphasis, however, we do not mean to suggest that all imaginable types of terrain changes located within a ski run will always fall within the statutory definition of "variations in steepness or terrain" that are "inherent dangers and risks of skiing."

During both the legislative debates preceding adoption of the 1990 amendments and the briefing and oral argument in the present case, much discussion centered on the case of *Aspen Skiing Co. v. Peer*, 804 P.2d 166 (Colo.1991). In *Peer*, the plaintiff was injured after encountering a drop of four or five feet created by the intersection of a service road with the trail on which he was skiing. *Id.* at 170. Counsel for amicus curiae Colorado Ski Country USA represented at oral argument that the definition of "inherent dangers and risks of skiing" in the 1990 amendments would "absolutely" include the dropoff described in *Peer.* However, this representation

is not supported by the legislative history of the 1990 amendments. In hearings before the Senate State Affairs Committee, Senator Tilman Bishop, the sponsor of the amendments, was asked whether a ski area operator would be required to post a sign warning skiers of a four-foot drop occurring on a ski trail. Senator Bishop responded, "Well, I think that you would find that ski area operators would give some indication of caution or of where these are considered as a danger beyond that of what would be considered inherent." Hearings on S.B. 80 Before the Senate State Affairs Committee, 57th Gen. Assembly, 2d Reg. Sess., Jan. 30, 1990, Audio Tape No. 90–7. Senator Bishop's comments underscore the necessity of determining whether a particular variation in terrain, wherever located, is among the "inherent dangers and risks of skiing," which need not be marked or signed by ski area operators for the protection of skiers.

plaintiff's injuries, the determination whether a particular factor was a substantial factor must ultimately be made by the jury. *City of Aurora v. Loveless,* 639 P.2d 1061, 1063 (Colo.1981) (proximate cause is an issue of fact to be determined by a jury); Restatement (Second) of Torts § 434(2)(a) (1965). The plaintiff's allegations concerning causation in his complaint and affidavit raise a sufficient issue of fact to prevent this court from making a determination as a matter of law that the plaintiff's injuries were not proximately caused by the defendant's negligence.

## IV.

The plaintiff also asserts that the trial court erred when it held that the plaintiff's injuries resulted from the plaintiff's failure to ski within his own ability. Based on its determination that the plaintiff's injuries resulted from other inherent dangers and risks of skiing, the court of appeals declined to address this issue. *Graven,* 888 P.2d at 316. We now hold that determination of this question requires the resolution of material questions of fact. The defendant presented no information in its affidavit relating to the plaintiff's skiing ability or his alleged failure to ski within that ability. Accordingly, this issue is also inappropriate for summary judgment and must be determined by a finder of fact.

## V.

For the foregoing reasons, we reverse the judgment of the court of appeals and remand for further proceedings consistent with this opinion.

ERICKSON, J., dissents, and VOLLACK, C.J., and KOURLIS, J., join in the dissent.

Justice ERICKSON dissenting:

I respectfully dissent.

In *Graven v. Vail Associates,* 888 P.2d 310 (Colo.App.1994), the court of appeals affirmed the trial court's entry of summary judgment in favor of Vail Associates (Vail), holding that the Ski Safety Act of 1979, as amended in 1990, §§ 33–44–101 to –114, 14 C.R.S. (1995) (Ski Safety Act), barred Gra-

ven's negligence claim because he suffered his injuries from "inherent dangers and risks" of skiing: specifically, slushy snow, a ravine, and a failure to ski within his own abilities. The majority reverses the court of appeals, holding that because the ravine into which Graven fell did not as a matter of law constitute an inherent risk of skiing as defined in section 33–44–103(3.5), genuine issues of material fact exist which precluded the district court's entry of summary judgment in favor of Vail. Because I believe that the result reached by the majority runs contrary to the legislative intent of the Ski Safety Act and that the evidence before the district court at the summary motion stage established that Graven suffered his injuries from statutorily articulated inherent risks of skiing, I would affirm the court of appeals.

## I

The Colorado Ski Safety Act defines the responsibilities of both skiers and ski area operators. §§ 33–44–101 to –114. The Ski Safety Act identifies the "inherent dangers and risks" of the sport of skiing, and precludes skiers from asserting claims against ski area operators for injuries resulting from those inherent risks. §§ 33–44–103(3.5), –112. Section 33–44–112 provides:

> Notwithstanding any judicial decision or any other law or statute to the contrary, ... no skier may make any claim against or recover from any ski area operator for injury resulting from the inherent dangers and risks of skiing.

Graven filed an action to recover damages for injuries sustained in a skiing accident on the Vail ski slopes on April 3, 1993. His complaint alleges that:

> As [he] was coming to a complete stop, he came upon some slushy snow and lost his edges, fell down, slid several feet, then plunged forty-fifty feet down an unmarked steep ravine or precipice ("Steep Ravine") unable to stop until colliding with a cluster of trees at the bottom of the Steep Ravine.

Graven claimed that Vail's failure to warn him of the dangerous conditions he encountered constituted negligence. Vail moved for summary judgment on the grounds that the

Ski Safety Act barred Graven's claim as a matter of law because his injuries resulted from inherent risks of skiing.

The Ski Safety Act defines inherent risks as:

[T]hose dangers or conditions which are an integral part of the sport of skiing, including changing weather conditions; snow conditions as they exist or may change, such as ice, hard pack, powder, packed powder, wind pack, corn, crust, *slush,* cut-up snow, and machine-made snow; surface or subsurface conditions such as bare spots, forest growth, rocks, stumps, streambeds, and *trees,* or other natural objects, and collisions with such natural objects; impact with lift towers, signs, posts, fences or enclosures, hydrants, water pipes, other man-made structures and their components; *variations in steepness or terrain, whether natural or as a result of slope design, snowmaking or grooming operations,* including but not limited to roads and catwalks or other terrain modifications; collisions with other skiers; and the failure of skiers to ski within their own abilities.

§ 33–44–103(3.5) (emphasis added).

The trial court held that the Ski Safety Act barred Graven's claim as a matter of law because his injuries were caused by inherent risks of skiing: specifically, the slushy snow, the ravine, the trees, and the failure to ski within his own abilities. Accordingly, the trial court granted Vail's motion for summary judgment.

The court of appeals affirmed, holding that the ravine into which Graven fell presented a "variation in steepness or terrain" and met the statutory definition of an inherent risk of skiing. The court concluded that because Graven suffered his injuries from inherent risks of skiing, Vail did not owe Graven a duty to post a sign warning of the ravine. The court declined to reach the issue of whether Graven failed to ski within his own abilities.

II

The majority reverses the trial court's entry of summary judgment in favor of Vail,

concluding that the statutorily identified inherent risk of "variations in steepness or terrain" is limited to those changes occurring within skiable areas and does not include terrain changes encountered adjacent to ski runs. Maj. op. at 519. The majority's interpretation of the definitional language "derives from the legislature's references to the source of variations 'as a result of slope design' and of 'snowmaking or grooming operations,' situations to be encountered within the areas intended for skiing." *Id.*

In my view, the majority employs a restrictive reading of the definitional language of section 33–44–103(3.5). The statutory definition of inherent risks includes "variations in steepness or terrain, whether *natural* or as a result of slope design, snowmaking or grooming operations." § 33–44–103(3.5) (emphasis added). The inclusion of natural terrain variations in section 33–44–103(3.5), demonstrates that, under the statute, inherent risks include terrain variations that might be encountered adjacent to ski runs, not solely those occurring within skiable areas. The ravine into which Graven fell was a natural unaltered part of the Vail ski area. Virtually every trail at a ski resort is bounded by inherent risks such as trees, natural objects, and terrain variations. Restricting the definition of variations in steepness or terrain to include only topographical conditions occurring within sites delineated as ski runs would require ski area operators to mark the edge and boundaries of every ski run. The Ski Safety Act does not impose a duty on ski area operators to separate and define the skiable parts of a mountain, and it would be virtually impossible for operators to comply with such a requirement. The 1990 amendment recognizes that downhill skiing entails specified inherent risks that are inseparable from the sport of skiing, and, accordingly, the Ski Safety Act does not require that ski area operators mark areas presenting inherent risks of skiing. *See* § 33–44–107(2)(d).

Graven's complaint and affidavit indicate that he fell down a ravine or precipice located next to the ski run. A ravine or precipice refers to a drop-off that is a variation in steepness or terrain. Under the plain word-

ing of the statute, the ravine into which Graven fell presented a variation in steepness or terrain and, accordingly, Vail did not owe Graven a duty to warn him of the inherent risk he encountered.

The majority states that the legislative history of the 1990 amendment is consistent with a narrow construction of inherent risks that limits variations in steepness or terrain to those changes that occur within skiable areas. *See* maj. op. at 519–520. However, portions of the legislative history support the contrary conclusion that the definition of inherent risks included variations in steepness or terrain such as a ledge or a ravine that could cause serious bodily injury. During the legislative debates on Senate Bill 80, the bill ultimately adopted as the 1990 amendment to the Ski Safety Act, those opposed to the bill presented a document entitled "Reasons for Opposition to S.B. 80." Under a subheading entitled "Accident/Injuries which will not be Covered if S.B. 80 Passes," the following example appeared:

> Skier injured when he/she strikes unmarked ledge. (ACTUAL CASE)[1]
>
> NO RECOVERY
>
> *Reason:* Variations in terrain (even man made) are inherent dangers.

Legislative Summary of Hearings on S.B. 80 Before the Senate State of Affairs Committee, 57th Gen. Assembly, 2d Reg. Sess., Jan. 30, 1990, Attachment A (emphasis in original). Because the legislative history offers conflicting interpretations as to what risks were included within the meaning of variations in steepness or terrain, I do not find it helpful in interpreting the plain language of the statute.

---

1. The document does not identify the "actual case" to which it refers. However, *Peer v. Aspen Ski Co.*, No. 88CA0190 (Colo.App. Aug. 10, 1989), a case decided by the court of appeals in an unpublished opinion that we later reviewed on certiorari, *Aspen Skiing Co. v. Peer*, 804 P.2d 166 (Colo.1991), was discussed at length during the legislative debates.

2. The Utah Act provides that "no skier may make any claim against, or recover from, any ski area operator for injury resulting from any of the inherent risks of skiing." Utah Code Ann. § 78–27–53. Under the Utah Act, inherent risks of skiing are defined as:

In determining the scope of the definition of inherent risks of skiing, the majority states:

> The dangers and risks detailed in section 33–44–103(3.5) are intended to describe those "which are an integral part of the sport of skiing." The detailed listing of dangers and risks must be read with that intent and limitation in mind. *Accord Clover v. Snowbird Ski Resort,* 808 P.2d 1037, 1044–45 (Utah 1991) (distinguishing between risks on the basis of whether they are an integral part of the sport of skiing).

Maj. op. at 519. The majority's interpretation requires a determination *under the facts of each case* as to whether the encountered inherent risk is one that is an "integral part of the sport of skiing." In my view, the legislative intent and the plain wording of the 1990 amendment to the Ski Safety Act do not warrant such an interpretation.

The majority follows the approach taken by the Utah Supreme Court in *Clover v. Snowbird Ski Resort,* 808 P.2d 1037 (Utah 1991) (interpreting Utah's Inherent Risk of Skiing Act, Utah Code Ann. §§ 78–27–51 to 54 (1992 & 1995 Supp.) (Utah Act)).[2] The Utah Supreme Court held that because the list of inherent dangers in the Utah Act is "expressly nonexclusive," the determination of whether an inherent risk is an "integral part of the sport of skiing" must be made on a case-by-case basis. *Clover,* 808 P.2d at 1044–45. Unlike the Utah Act, the Colorado Ski Safety Act's list of inherent risks does not contain express language of limitation. *See* § 33–44–103(3.5). The Utah Act states that the inherent dangers of skiing are "not limited to" those risks specifically identified in the Act. Utah Code Ann. § 78–27–52(1)

> [T]hose dangers or conditions which are an integral part of the sport of skiing, *including, but not limited to:* changing weather conditions, variations or steepness in terrain; snow or ice conditions; surface or subsurface conditions such as bare spots, forest growth, rocks, stumps, impact with lift towers and other structures and their components; collisions with other skiers; and a skier's failure to ski within his own ability.
>
> Utah Code Ann. § 78–27–52(1) (emphasis added).

(" 'Inherent risks of skiing' means those dangers or conditions which are an integral part of the sport of skiing, *including, but not limited to* ...") (emphasis added). To the contrary, the Colorado Act does not contain any language indicating that the statute contemplates inherent risks other than those specifically identified.[3] § 33–44–103(3.5), (" 'Inherent dangers and risks of skiing' means those dangers or conditions which are an integral part of the sport of skiing, *including* ...") (emphasis added)).

The plain language of the Colorado Act demonstrates that the General Assembly specifically identified a list of the inherent risks of skiing and intended that those inherent risks are per se "an integral part of the sport of skiing." The General Assembly enacted the 1990 amendment in response to the threat posed to ski area operators by an escalating numbers of claims for personal injuries sustained by skiers.[4] The 1990 amendment clarified the law by precisely defining the inherent risks of skiing, but its primary purpose was to alter ski resort liability by prohibiting recovery for injuries resulting from those inherent risks.[5] The case-by-case approach adopted by the majority will effectively frustrate the legislative intent of the 1990 amendment because it allows a skier who was injured by statutorily identified inherent risks to avoid summary judgment merely by alleging that the inherent risk encountered was not "an integral part of the sport of skiing."

In granting summary judgment in favor of Vail, the trial court held that the facts established that Graven's injuries were caused by slushy snow, the ravine, trees, and the failure to ski within one's own abilities. Vail presented the affidavit of Lawrence Lane which described the accident area as a "snow covered transition" off of the groomed portion of the ski run which presented "a variation in terrain as a result of natural conditions, slope design, and grooming operations." In opposition, Graven filed an affidavit stating: "The accident occurred at the side of the ski run, after I had left a transition area. When attempting to stop at the side of the ski run, I fell down a 40 to 50 foot precipice."

Vail's motion for summary judgment and accompanying affidavit tracked the language of the Ski Safety Act, stating that Graven's suffered his injuries as a result of inherent risks, specifically, slush, a variation in steepness or terrain, and trees. Graven's description of the accident site as a ravine and a precipice did not refute Vail's showing that

---

**3.** On March 13, 1990, before the House State of Affairs Committee, Poncho Hayes, a lobbyist for Colorado Ski Country USA, spoke on Senate Bill 80. He explained certain amendments to the proposed bill:

> The first amendment to page three, line ten [referring to the section defining the inherent risks and dangers of skiing] we have stricken the words "but not limited to" so that it simply reads the sport of skiing, including, it goes on to say, changing weather conditions, snow conditions, and so forth. This was specifically requested by Representative Paulson and it's a clarification that the items that follow are the "inherent risks and dangers" that are being referred to.

Hearings on S.B. 80 Before the House State of Affairs Committee, 57th Gen. Assembly, 2d Reg. Sess., Mar. 13, 1990, Audio Tape No. 90–18.

**4.** The legislative declaration introducing the 1990 amendment stated in pertinent part:

> The general assembly ... finds that, despite the passage of the "Ski Safety Act of 1979," ski area operators of this state continue to be subjected to claims and litigation involving accidents which occur during the course of the sport of snow skiing, which claims and litigation threat thereof unnecessarily increase Colorado ski area operator costs. The general assembly further finds that such increased costs are due, in part, to confusion under the "Ski Safety Act of 1979" as to whether a skier accepts and assumes the dangers and risks inherent in the sport of skiing. It is the purpose of this act, therefore, to clarify the law in relation to skiing injuries and the dangers and risks inherent in that sport, to establish as a matter of law that certain dangers and risks are inherent in that sport, and to provide that, as a matter of public policy, no person engaged in that sport shall recover from a ski area operator for injuries resulting from those inherent dangers and risks.

Ch. 256, sec. 1, Legislative Declaration, 1990 Colo. Sess. Laws 1540.

**5.** In introducing Senate Bill 80, Senator Bishop, the primary sponsor of the bill, stated: "This [amendment] will allow ski area operators to get rid of frivolous claims very early in the legal process, hopefully." Floor Debate on S.B. 80 Before the Senate State of Affairs Committee, 57th Gen. Assembly, 2d Reg. Sess., Jan. 30, 1990, Audio Tape No. 90–11.

Graven's injuries resulted from inherent risks of skiing. I believe that denying summary judgment under the facts of this case will encourage the use of imaginative terminology in characterizing a statutorily identified inherent risk in order to avoid application of the Ski Safety Act's preclusion on recovery for injuries resulting from inherent risks of skiing. Because Graven failed to rebut Vail's affirmative showing of non-liability for the accident as a matter of law under the specific wording of the 1990 amendment, I would affirm the court of appeals.

I am authorized to say that Chief Justice VOLLACK and Justice KOURLIS join in this dissent.