Michelle **GLOVER**, a natural person and citizen of the United Kingdom, Plaintiff,

v.

The **VAIL CORPORATION**, d/b/a Vail Associates, Inc., a Colorado corporation; Vail Associates, Inc., a Colorado corporation; Vail Associates Holdings, Ltd., a Colorado corporation; and Vail Holdings, Inc., a Colorado corporation, Defendants.

Civil Action No. 96–B–394.

United States District Court, D. Colorado.

Feb. 19, 1997.

John B. Moorhead, Michael J. Roche, Baker & Hostetler, Denver, CO, for Plaintiff.

Stephen Hopkins, Long & Jaudon, P.C., Denver, CO, for Defendants.

## MEMORANDUM OPINION & ORDER

BABCOCK, District Judge.

Plaintiff, Michelle Glover (Glover), asserts various claims for negligence against defendants (collectively, Vail) resulting from a skiing accident. Vail moves for summary judgment on all claims. For the following reasons, I will grant Vail's motion.

### I.

The following facts are undisputed or, if disputed, are viewed most favorably to Glover. At approximately 2:00 p.m. on February 23, 1994, Phillip Glasser (Glasser), while skiing down the "Born Free" ski run at Vail, collided with Glover. As a result of the collision, Glasser was killed, and Glover was severely injured.

At the time of the accident, Glasser was employed as a ticket seller at Vail's Lionshead ticket booth. Lindvall Dep. pp. 7–8. On February 23, 1994, Glasser clocked in for his shift at approximately 7:30 a.m. *Id.* at 18. Shortly after 1:00 p.m., his supervisor, Carol Lindvall (Lindvall), asked Glasser if he wanted to check out to go skiing. Pltf.Ex. B. Glasser agreed, and Lindvall told him to be back by 3:00 p.m. *Id.*

Just prior to the accident, David Tucholke (Tucholke), a snow making foreman employed by Vail, observed Glasser ski past him as Glasser entered a chairlift maze. In a report prepared shortly after the accident, Tucholke stated that Glasser entered the maze "faster than [he] had ever seen anyone before." Pltf.Ex. D. Tucholke recognized Glasser as a Vail employee at the time, and Glasser was wearing ski-pants issued to Vail employees. *Id.* There is also evidence that Glasser had just skied through a "slow skiing zone" at an excessive rate of speed. Tucholke Depo. p. 56; Pltf.Ex. G.

Glasser was skiing with a Vail employee ski pass, and Tucholke had the power to admonish Glasser or take the pass away for reckless skiing. Tucholke Depo. p. 16; Lindvall Depo. p. 41. Tucholke, however, did not reprimand Glasser, warn the ski patrol, or warn patrons, although he admits that he has reprimanded employees for skiing recklessly in the past and he could have contacted the ski patrol by radio. Tucholke Depo. p. 53. Shortly thereafter, Glasser and Glover collided, resulting in Glasser's death and injuries to Glover.

Glover asserts claims of negligence against Vail, including theories of respondeat superior, negligent supervision, negligent failure to warn, and negligent failure to control. All claims are brought against Vail only. Glover has not named Glasser's estate as a defendant in this action.

### II.

The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995). Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The nonmoving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, that it believes demonstrate the absence of genuine issues for trial.

*Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.,* 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e).

### III.

Vail argues that the Colorado Ski Safety Act of 1979 (the Act), Colo.Rev.Stat. § 33–44–101 et seq., precludes recovery on all of Glover's claims. I agree. Accordingly, I will grant Vail's motion for summary judgment.

Where, as here, the Act is clear and unambiguous, I am not permitted to alter its terms:

> In construing statutory provisions, [a court] should give effect to the intent of the legislature. [A court] must look first to the statutory language itself, giving words and phrases their commonly accepted meaning. Where the language of a statute is plain and the meaning is clear, [a court] need not resort to interpretive rules of statutory construction, but must apply the statute as written.

*Univex International, Inc. v. Orix Credit Alliance, Inc.,* 914 P.2d 1355, 1358 (Colo. 1996) (internal citations omitted).

Section 112 of the Act states: "Notwithstanding any judicial decision or any other law or statute to the contrary, ... no skier may make any claim against or recover from any ski area operator for injury resulting from any of the inherent dangers and risks of skiing." Section 103(3.5) defines "inherent dangers and risks of skiing" as "those dangers or conditions which are an integral part of the sport of skiing, including ... collisions with other skiers...."

Further, according to the Act, "'Skier' means any person using a ski area for the purpose of skiing...." § 33–44–103(8). Glasser clearly fit this definition at the time he collided with Glover. In addition, it is undisputed that Vail meets the requirements for a "ski area operator" under the Act. *See*

§ 33–44–103(7). Therefore, according to the plain language of the Act, Glasser's collision with Glover was an "inherent danger and risk of skiing," and Glover may not recover from Vail for her injuries resulting from the collision. Glover's arguments to the contrary are based on vague notions of fairness and are not supported by the plain language of the Act. Although I am sympathetic to Glover's plight, I am bound by the Act's plain language and cannot rewrite it in accordance with individual conceptions of prudent public policy. *See United States v. Rutherford,* 442 U.S. 544, 555, 99 S.Ct. 2470, 2477, 61 L.Ed.2d 68 (1979); *United States v. Louisiana Pacific Corp.,* 106 F.3d 345, 349 (10th Cir.1997).

Specifically, Glover contends that the Act does not preclude actions against ski area operators where one of the skiers involved in the collision is an employee of the operator and the operator's negligence, in part, caused the injury. In support of her argument, Glover cites cases interpreting similar language in ski safety acts from other states to allow claims against a ski area operator. *See Nolan v. Mt. Bachelor, Inc.,* 317 Or. 328, 856 P.2d 305 (1993); *Tilley v. Brodie Mountain Ski Area, Inc.,* 412 Mass. 1009, 591 N.E.2d 202 (1992); *Clover v. Snowbird Ski Resort,* 808 P.2d 1037 (Utah 1991). None of these cases is controlling as they do not address the Colorado Act. More importantly, their reasoning is not persuasive.

In *Tilley,* for example, the Supreme Court of Massachusetts was confronted with the following language from its ski safety act: "[T]he responsibility for collisions by any skier with any other skier or person shall be solely that of the skier or person involved and not that of the operator...." 591 N.E.2d at 202, n. 1. The court held, despite the clear language of the statute, that the legislature did not intend "to alter the well established common law rule that an employer is liable for the negligence of its agents or employees." *Id.* at 203. The court reasoned that "there is nothing in the statutory scheme ... that indicates a legislative intent to insulate the ski area operation from liability for the negligence of its agents or employees." *Id.*

I disagree. Indeed, one of the stated purposes of the Massachusetts statute (and the Colorado Act) is to decrease the economic threat to ski area operators by limiting their liability. *Id.* at 203; *Graven v. Vail Associates, Inc.*, 909 P.2d 514, 524 n. 4 (Erickson, J. dissenting) (Colo.1995). The statutory language in *Tilley,* as here, clearly abrogates operator responsibility for skier/skier collisions, and the statute makes no exception for agency principles. Accordingly, I decline to follow the reasoning of *Tilley.*

I am similarly unpersuaded by *Nolan.* There, the Supreme Court of Oregon tortured the language of its statute to conclude that ski area operators could be held liable for negligence where an employee is involved in a collision with a patron. 856 P.2d 305. In reaching its conclusion, the court followed this syllogism: Although the ski instructor involved in the collision was a "skier" within the meaning of the statute, he was also an employee of the ski area operator. "Ski area operator" is defined in the statute to include agents and employees. Therefore, when the plaintiff collided with the ski instructor, he was also somehow colliding with the ski area operator, and direct suits against the party involved in the collision are not precluded by the statute. *Id.* at 308. I remain unconvinced.

First, any interpretation of the statute that regards a skier as having collided with a ski area operator is too contrived to be followed. Second, I have serious doubts whether Glasser was acting as an agent or employee of Vail at the time of the accident as he was skiing on his own time and for his own pleasure. Finally, regardless of whether Glasser was acting within the scope of his employment at the time of the accident, at least as the *Nolan* court's reasoning applies to Colorado law, it is unsupported by the language of the Act.

Colo.Rev.Stat. § 33–44–112 states unequivocally that "no skier may make any claim against or recover from any ski area operator for injury resulting from any of the inherent dangers and risks of skiing." As explained above, it is indisputable that Glasser and Glover were skiers who were involved in a collision, which is specifically defined as one of the "inherent dangers and risks of skiing." Accordingly, any argument that Vail is liable because Glasser may have also been a "ski area operator" is curtailed by the clear language of section 112. In fact, even if Glasser were a "ski area operator" within the meaning of the Act, although he could have been liable as a "skier," the Act would have abrogated his personal liability in his capacity as a "ski area operator."

I am equally unpersuaded by *Clover,* 808 P.2d 1037. In *Clover,* the Utah Supreme Court permitted a guest to bring an action against a ski area operator to recover for injuries resulting from a collision allegedly caused by an employee. Utah's "Inherent Risk of Skiing Statute" is nearly identical to Colorado's Act. For example, Utah defines "inherent risk of skiing" as "those dangers or conditions which are an integral part of the sport of skiing, including, but not limited to: ... collisions with other skiers...." *Id.* at 1044. The plain language of the Utah statute, therefore, indicated that the defendant ski area should have been immune from liability. Apparently dissatisfied with that result, however, the court reasoned:

> The basis for Snowbird's argument is that the language of section 78–27–52(1) stating that " '[i]nherent risk of skiing' means those dangers or conditions which are an integral part of the sport of skiing, including but not limited to: ... collision with other skiers" must be read as defining all collisions between skiers as inherent risks. The wording of the statute does not compel such a reading. To the contrary, the dangers listed in section 78–27–52(1) are modified by the term "integral part of the sport of skiing." Therefore, ski area operators are protected from suits to recover for injuries caused by one or more of the dangers listed in section 78–27–52(1) only to the extent that those dangers, under the facts of each case, are integral aspects of the sport of skiing. Indeed, the list of dangers in section 78–27–52(1) is expressly nonexclusive. The statute, therefore, contemplates that the determination of whether a risk is inherent be made on a case-by-case basis, using the entire statute, not

solely the list provided in section 78–27–52(1). *Id.* at 1044–45. The court, therefore, concluded that the statute was ambiguous and subject to judicial interpretation. After reviewing the legislative history, previous common law, and stated legislative intent, the court held that plaintiff's suit was not barred. Once again, I believe the court's analysis is flawed.

Clearly, the prefatory language "integral part of the sport of skiing" is important to the understanding of the statute. However, I cannot agree that such language somehow transforms the term "including," followed by a specific list, to mere suggestions of what risks *might be* an "integral part of the sport of skiing." Although "include" is not always synonymous with "mean" in statutory interpretation, when, as here, a general term is defined to "include" specific examples, the general term cannot be constricted to contemplate *less than* those specific examples. *See Lyman v. Town of Bow Mar,* 188 Colo. 216, 533 P.2d 1129, 1133 (1975) (citing *Helvering v. Morgan's, Inc.* 293 U.S. 121, 125 n. 1, 55 S.Ct. 60, 62 n. 1, 79 L.Ed. 232 (1934) ("[W]here 'means' is employed, the term and its definition are to be interchangeable equivalents, and . . . the verb 'includes' imports a general class, some of whose particular instances are those specified in the definition.")). Thus, although other risks not listed in the statute may be "an integral part of the sport of skiing," I fail to see how a collision with another skier, which is specifically listed, can be excluded.

In a slightly different context, the Colorado Supreme Court cited *Clover* with approval in *Graven v. Vail Associates, Inc.,* 909 P.2d 514, 519 (Colo.1995). In *Graven,* a skier was injured when he fell into a ravine located to the side of one of Vail's ski runs. The plaintiff blamed the accident on slush, terrain variations, and trees, all of which are listed specifically as "inherent dangers and risks of skiing" in the Act. A divided Colorado Supreme Court, however, held that the term "variations in steepness or terrain" in section 103(3.5) applied only to skiable areas, and not those conditions that might be encountered adjacent to the runs. *Id.* at 519.

The court premised its decision on the language of section 103(3.5): "This construction derives from the legislature's references to the source of the variations as 'a result of slope design' and of 'snowmaking or grooming operations,' situations to be encountered within areas intended for skiing." *Id.* The court also observed that the "dangers and risks detailed in section 33–44–103(3.5) are intended to describe those 'which are an integral part of the sport of skiing.' The detailed listing of dangers and risks must be read with that intent and limitation in mind." *Id.* (citing *Clover,* 808 P.2d at 1044–45). Further, the court stated that the legislative history of the Act suggested that the term "variations in steepness or terrain" should be limited to skiable areas. *Id.* Accordingly, the court held that the plaintiff's claims were not barred.

*Graven* is not controlling here. Nor do I read *Graven*'s citation to *Clover* as adopting, wholesale, the Utah court's holding. Unlike in *Graven,* the definitional term at issue here, "collisions with other skiers," is subject to only one interpretation. Glover and Glasser collided, and Glasser clearly meets the Act's definition of "skier." *See* Colo.Rev. Stat. § 33–44–103(8). Accordingly, unlike the *Graven* court, I have no occasion to resolve ambiguity in the Act by reference to legislative history and intent. The court's tangential reference to *Clover* was made in the context of a case where the court stated that the terms of the Act were unclear. There is no ambiguity here to warrant such analysis, and I will not invent ambiguity as a vehicle to reach a result at odds with the Act.

Indeed, three of seven justices on the Colorado Supreme Court dissented in *Graven,* stating that the majority was not justified in its complex reading of the Act. In *Graven,* there was at least an articulable basis in the language of the Act to justify the court's decision. I cannot believe, however, that a majority of the Colorado Supreme Court would permit the plaintiff to maintain her case where, as here, the language of the Act unequivocally prohibits it.

The accident that occurred here was tragic. Mr. Glasser lost his life, and Ms. Glover was severely injured through no apparent

fault of her own. But I am not permitted to legislate. Rather, I am bound to interpret the law as written by the Colorado General Assembly, and where, as here, the law is clear, I have no discretion to alter it. As the Supreme Court has stated: "By articulating the rules of law with some clarity and by adhering to rules that are justified in their general application, ... we enhance the legislative prerogative to amend the law." *Arizona v. Maricopa County Medical Soc'y*, 457 U.S. 332, 354, 102 S.Ct. 2466, 2478, 73 L.Ed.2d 48 (1982). If the application of a clearly written statute produces an unfair result, it is the province of the legislature, not the judiciary, to change it.

Accordingly, it is ORDERED that:

1. Defendants' motion for summary judgment is GRANTED;

2. Defendants are awarded their costs.