Patricia HENISSE, Petitioner

v.

FIRST TRANSIT, INC., an Ohio corporation licensed to do business in Colorado, and Eric Victor Cotton, Respondents.

No. 09SC626.

Supreme Court of Colorado, En Banc.

Feb. 7, 2011.

**578**

Cook & Associates, P.C., Stephen H. Cook, Boulder, Colorado, Walter H. Sargent, a professional corporation Walter H. Sargent, Colorado Springs, Colorado, Attorneys for Petitioner.

Wood, Ris & Hames, P.C., William A. Rogers, III, Mark J. Jachimiak, Brendan L. Loy, Denver, Colorado, Attorneys for Respondents.

John W. Suthers, Attorney General, Daniel D. Domenico, Solicitor General, Kathleen L. Spalding, Senior Assistant Attorney General, Denver, Colorado, Attorneys for Amicus Curiae State of Colorado.

Tami A. Tanoue, Denver, Colorado, Attorney for Amicus Curiae Colorado Intergovernmental Risk Sharing Agency.

Sears & Swanson, P.C., Victoria C. Swanson, Colorado Springs, Colorado, Attorneys for Amicus Curiae Colorado Trial Lawyers Association.

Rolf G. Asphaug, Denver, Colorado, Attorney for Amicus Curiae Regional Transportation District.

Justice RICE delivered the Opinion of the Court.

In this opinion, we review a court of appeals decision holding that an employee of a private company that contracted with the Regional Transportation District ("RTD") to provide bus driving services was a "public employee" under the Colorado Governmental Immunity Act, sections 24–10–101 to –119, C.R.S. (2010) ("CGIA"), and that his liability, as well as his employer's respondeat superior liability, was capped at $150,000.[1]  We hold that the bus driver was not a "public employee" entitled to immunity under the CGIA and that his employer was also not entitled to such immunity.

## I.  Facts and Procedural History

Patricia Henisse was injured when her car was struck by an RTD bus driven by Eric Victor Cotton.  Cotton was an employee of First Transit, Inc., a private company that contracted with RTD to provide bus drivers for various RTD bus routes.[2]  Henisse sued

---

1.  We granted certiorari on two issues:
    1) Whether the court of appeals erred in holding that the employee of a private business is a "public employee" and entitled to governmental immunity based on the employer's agreement with the Regional Transportation District.
    2) Whether the Colorado Governmental Immunity Act limits the liability of a private employer that contracts with a governmental entity to perform public services when the negligence of that business's employee causes injury and the sole claim against the employer is for vicarious liability of its employee.

2.  At the time of the accident, section 32–9–119.5(2)(a), C.R.S. (2004) mandated that RTD contract with private companies to provide at least fifty percent of its vehicular services.  That

Cotton for negligence and First Transit for respondeat superior liability.

Cotton and First Transit moved for a determination of law under C.R.C.P. 56(h) to determine whether the CGIA's $150,000 damages cap applied to Cotton and First Transit. The trial court granted the motion, finding that Cotton was an employee of RTD, a public entity, and thus that he and First Transit were subject to the CGIA's damages cap.

The court of appeals affirmed, holding that Cotton was a common law employee of RTD and thus a "public employee" under the CGIA. It also agreed that the damages cap applied to First Transit because, under the theory of respondeat superior, an employer cannot be held liable for compensatory damages in excess of the amount for which the employee is liable.

## II.  Analysis

### A.  Standard of Review

■ We review a lower court decision on a motion for a determination of law de novo. *See Hopp & Flesch, LLC v. Backstreet,* 123 P.3d 1176, 1180–81 (Colo.2005) (citation omitted). An order deciding the question is proper "[i]f there is no genuine issue of any material fact necessary for the determination of the question of law." C.R.C.P. 56(h). The nonmoving party is entitled to all favorable inferences. *See W. Elk Ranch, LLC v. United States,* 65 P.3d 479, 481 (Colo.2002).

■ We also review decisions related to statutory construction de novo. *Bostelman v. People,* 162 P.3d 686, 689 (Colo.2007) (citation omitted). When a statute is in derogation of the common law, such as the CGIA, we construe the statute strictly, *Bertrand v. Bd. of Cnty. Comm'rs,* 872 P.2d 223, 229 (Colo.1994) (citations omitted), giving "consistent, harmonious, and sensible effect to all of its parts," *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.,* 109 P.3d 585, 593 (Colo.2005) (citations omitted). Our primary task is to give effect to the intent of the General Assembly. *Klinger v. Adams Cnty. School Dist. No. 50,* 130 P.3d 1027, 1031 (Colo.2006) (citation omitted). This intent will prevail over a literal interpretation of the statute that would lead to an absurd result. *State v. Nieto,* 993 P.2d 493, 501 (Colo.2000) (citations omitted).

### B.  Framework and Purpose of the CGIA

The purpose of the CGIA is to protect public employees, public entities, and, by extension, taxpayers from unlimited liability. § 24–10–102. The CGIA provides that a public entity or a public employee performing duties within the scope of his employment "shall be immune from liability in all claims for injury which lie in tort or could lie in tort ...." § 24–10–106(1); *accord* § 24–10–105(1). The CGIA, however, waives immunity in some instances. Relevant to this case, it waives immunity "in an action for injuries resulting from ... [t]he operation of a motor vehicle, owned or leased by such public entity, by a public employee while in the course of employment ...." § 24–10–106(1)(a). If immunity is waived, the CGIA limits the liability of a public entity or public employee to $150,000 for an injury to a single individual. § 24–10–114(1)(a).

### C.  "Public Employee" Under Section 24–10–103(4)

■ The outcome of this case rests on the question of whether Cotton was a "public employee" under section 24–10–103(4)(a). A "'[p]ublic employee' means an officer, *employee,* servant, or authorized volunteer of the public entity, whether or not compensated, elected, or appointed, but does not include an *independent contractor* ...." *Id.* (emphasis added). The plain language of section 24–10–103(4)(a) states that an independent contractor can *never* be a "public employee." *Springer v. City & Cnty. of Denver,* 13 P.3d 794, 800 (Colo.2000) ("The exclusion of independent contractors from the definition of 'public employee' means that an independent contractor cannot, under any

section has since been modified to state that RTD *"may* implement a system under which up to fifty-eight percent of the district's vehicular service is provided by qualified private businesses pursuant to competitively negotiated contracts." § 32–9–119.5(2)(a) (2010) (emphasis added).

circumstances, gain immunity by reason of the CGIA's provisions . . . . ").

The parties do not dispute that: (1) First Transit was an independent contractor; (2) Cotton was an employee of First Transit; and (3) RTD was a public entity for the purposes of the CGIA. They do, however, contest whether Cotton, as First Transit's employee, was also a "public employee" under the CGIA as an employee of RTD. We hold that because Cotton was an employee of an independent contractor, he was not a "public employee" under the CGIA.

### 1. Language of Section 24–10–103(4)

The language of section 24–10–103(4), read in its entirety, indicates that the General Assembly did not intend for employees of independent contractors to be "public employee[s]" under the CGIA. The General Assembly specifically deemed certain types of workers—ones who might typically be considered independent contractors or employees of independent contractors—to be "public employee[s]" under the CGIA. § 24–10–103(4)(b). Specifically, any release hearing officer or administrative hearing officer utilized by the department of corrections and the state board of parole is a "public employee" under the CGIA when performing those services.[3] § 24–10–103(4)(b)(VI)–(VII). Also, a healthcare practitioner-in-training who is enrolled to matriculate at a public entity and working at either a public or *private* entity is a "public employee." § 24–10–103(4)(b)(III).

When the legislature specifically includes one thing in a statute, it implies the exclusion of another. *See A.D. Store Co. v. Exec. Dir.,* 19 P.3d 680, 682 (Colo.2001) (acknowledging the doctrine of *expressio unius est exclusio alterius); Black's Law Dictionary* 661 (9th ed. 2009) (defining the term). Because the General Assembly explicitly included some groups that would not normally be considered "public employee[s]" under the CGIA, it necessarily excluded all other groups not fitting the definition. The General Assembly had the opportunity to include drivers employed by independent contractors who con-

tract with RTD as "public employee[s]," but chose not to do so. Therefore, the *plain* language of section 24–10–103(4) indicates that the General Assembly did not intend to include employees of private companies that contract with public entities in the definition of "public employee."

### 2. *Perkins* **and** *Norton*

Cotton and First Transit principally rely on two cases to support their position that Cotton was a "public employee," arguing that those cases are particularly analogous to the facts and issues in this case. We disagree.

In *Perkins v. Regional Transportation District,* a passenger was injured while riding an RTD bus operated by an employee of a private company that contracted with RTD. 907 P.2d 672, 673 (Colo.App.1995). The passenger brought a negligence suit against the bus driver and, under respondeat superior, against RTD and the private contractor. *Id.* at 673–74. Despite language in the contract between RTD and the private company stating that its employees were not employees of RTD, the court of appeals determined that the bus driver was a common law employee of RTD for purposes of respondeat superior liability. *Id.* at 674–75.

*Perkins,* however, examined a different issue than is before us in this case. It did not implicate the CGIA or the definition of "public employee." Instead, it analyzed a common law employer-employee relationship for the purpose of determining respondeat superior liability.

In *Norton v. Gilman,* this Court examined a similar issue in a different context—whether employees of a county social services department were "public employee[s]" entitled to indemnity under the CGIA. 949 P.2d 565, 566 (Colo.1997). We declared that in order to determine if a worker is a "public employee," we must use the common law meaning of "employee" to determine if he is an employee of a public entity. *Id.* at 567 ("In other words, 'public employee' simply means 'employee.' Therefore, we look to the common

---

**3.** These are private licensed attorneys who are not necessarily otherwise associated with a pub-

lic entity. *See* § 17–2–201(3)(c), C.R.S. (2010).

law meaning of 'employee' to determine whether the director or the supervisors are 'public employees'...."). Because the state did not have the right to control the county employees, we determined that they were not "public employees" under the CGIA. *Id.* at 568.

Unlike this case, *Norton* did not involve an independent contractor relationship. Thus, we did not analyze that part of the definition. Therefore, *Norton* is not controlling in this instance.

Despite these distinctions, Cotton and First Transit argue that, read together, *Perkins* and *Norton*support their position. Again, we disagree. Reading those cases together to control the outcome here reads out the General Assembly's explicit exclusion of independent contractors from the definition of "public employee." Further, such a reading would lead to an interpretation where private companies serving as independent contractors, such as First Transit, would be excluded from the definition of "public employee," but their employees, such as Cotton, could be "public employee[s]" and ultimately pass on their limited liability to their explicitly excluded employers. We do not agree that the General Assembly envisioned this result and conclude that Colorado case law does not support it.

### D. First Transit's Liability

First Transit is liable solely under the theory of respondeat superior. Under that theory, an employer is vicariously liable for the negligence of its employees while acting in the scope and course of their employment. *Hamm v. Thompson*, 143 Colo. 298, 303, 353 P.2d 73, 75 (1960). Its liability stems exclusively from the liability of the employee. *Sandoval v. Archdiocese of Denver*, 8 P.3d 598, 603 (Colo.App.2000).

Because we hold that Cotton is not a "public employee" and not subject to the CGIA's $150,000 damages cap, First Transit, as his employer, is also not subject to the cap.

### III. Conclusion

We hold that Cotton was not a "public employee" under the CGIA and that, therefore, the CGIA's $150,000 damages cap does not apply to him. Although he may have been an employee of RTD under a common law analysis, he was also an employee of First Transit, an independent contractor. Therefore, Cotton was excluded from being a "public employee" under the CGIA.

Based on our resolution that Cotton is not a "public employee," First Transit's respondeat superior liability is not subject to the CGIA's $150,000 limit. As such, the judgment of the court of appeals is reversed.