**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 27, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RAJEEV KUMAR, M.D.,

       Plaintiff–Appellant,

v.

COPPER MOUNTAIN, INC., a Delaware
corporation, doing business as Copper
Mountain Resort,

       Defendant–Appellee.

No. 09-1559
(D.C. No. 1:07-CV-02597-PAB-MEH)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **SEYMOUR**, and **LUCERO**, Circuit Judges.

Dr. Rajeev Kumar appeals the district court's grant of summary judgment favoring

Copper Mountain, Inc.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

On March 16, 2006, Kumar was skiing at Copper Mountain ski resort in an area

---

    * This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 32.1.

where an "intermediate" run called Timber Ridge converged with two "expert" runs known as Retreat and Gold Digger. Near the intersection, snow naturally accumulates to form a feature referred to as "Celebrity Cornice." As Kumar approached Celebrity Cornice he apparently did not see the edge of the drop-off. He unintentionally skied off of the cornice, fell, and suffered serious injuries as a result.

Although Copper Mountain employees knew of Celebrity Cornice, it was not marked on trail maps given to skiers by the resort. Instead, "Celebrity Cornice" appears to be a name informally adopted by skiers and ski patrol personnel. The parties dispute whether the cornice was marked such that approaching skiers would have been made aware of its presence on the day of the accident. It is undisputed, however, that Celebrity Cornice and the trails on which it was located were not marked as "freestyle terrain."

Kumar sued Copper Mountain, alleging negligence and negligence per se. He claims that Copper Mountain is liable under the common-law doctrine of assumed duty for failing to adequately mark Celebrity Cornice, and that Colorado's Ski Safety Act ("SSA") required Copper Mountain to mark Celebrity Cornice as "freestyle terrain." The district court granted summary judgment in favor of Copper Mountain. Kumar now appeals.

## II

We review the district court's grant of summary judgment de novo. <u>Shero v. City of Grove</u>, 510 F.3d 1196, 1200 (10th Cir. 2007). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment

-2-

as a matter of law." Fed. R. Civ. P. 56(a).

## A

The purpose of the SSA is "to further define the legal responsibilities of ski area operators and their agents and employees; to define the responsibilities of skiers using such ski areas; and to define the rights and liabilities existing between the skier and the ski area operator and between skiers." Colo. Rev. Stat. § 33-44-102. To this end the SSA provides: "Notwithstanding any judicial decision or any other law or statute to the contrary, . . . no skier may make any claim against or recover from any ski area operator for injury resulting from any of the inherent dangers and risks of skiing." § 33-44-112. However, the SSA further states: "A violation by a ski area operator of any requirement of this article . . . shall, to the extent such violation causes injury to any person or damage to property, constitute negligence on the part of such operator." § 33-44-104(2). The definition of "inherent risks and dangers of skiing" specifically excludes "the negligence of a ski area operator as set forth in section 33-44-104(2)." § 33-44-103(3.5).

Accordingly, a ski area operator may be liable under one of two theories. First, a skier may recover if his injury did not result from an inherent danger or risk of skiing. Such a claim would fall outside the scope of the SSA and would be governed by common-law negligence principles. See Graven v. Vail Assocs., 909 P.2d 514, 520 (1995), partially abrogated on other grounds by Colo. Rev. Stat. § 33-44-112. Second, a ski area may be liable because it violated a provision of the SSA and that violation resulted in injury.

-3-

Kumar asserts claims under both theories of liability.

**B**

We first consider whether the SSA precludes Kumar's common-law negligence claim. Under the express language of the SSA, the Act preempts the common law with respect to "any claim . . . for injury resulting from any of the inherent dangers and risks of skiing." § 33-44-112. The SSA defines the phrase "inherent dangers and risks of skiing" to mean:

> those dangers or conditions that are a part of the sport of skiing, including changing weather conditions; snow conditions as they exist or may change, such as ice, hard pack, powder, packed powder, wind pack, corn, crust, slush, cut-up snow, and machine-made snow; surface or subsurface conditions such as bare spots, forest growth, rocks, stumps, streambeds, cliffs, extreme terrain, and trees, or other natural objects . . . ; variations in steepness or terrain, whether natural or as a result of slope design, snowmaking or grooming operations, including but not limited to roads, freestyle terrain, jumps, and catwalks or other terrain modifications . . . .

§ 33-44-103(3.5).

We conclude that the cornice at issue falls within the statutory definition of an inherent danger. At a minimum, it either falls within the section relating to snow conditions as they exist or change, or the provision covering variations in steepness or terrain.[1]

_____

[1] Kumar relies on Graven, 909 P.2d at 519, for the proposition that there is a question of fact as to whether Celebrity Cornice is an inherent danger. This reliance is ill-founded. In 2004, the Colorado legislature partially abrogated Graven by expanding the definition of "inherent dangers and risks of skiing." Compare Graven, 909 P.2d at 519 (discussing the prior version of the statute, which limited the definition to "those

Continued . . .

Having concluded that the cornice falls within the SSA's definition of an "inherent danger," it follows that the SSA abrogates the common law with respect to injuries "resulting from" the cornice. Even if Copper could have assumed a duty to mark Celebrity Cornice, the SSA expressly bars "<u>any claim</u>" based on an injury caused by the cornice. § 33-44-112 (emphasis added).

Nevertheless, Kumar contends that his claim survives the SSA regardless of whether the cornice is an "inherent danger and risk of skiing." In Kumar's view, his injuries did not result from an inherent danger of skiing (the existence of the cornice), but instead from Copper Mountain's alleged failure to mark the feature. Consequently, Kumar argues, the SSA does not supplant the common law doctrine of assumed duty.

Kumar's reliance upon the words "resulting from" to support his view is misplaced. Assuredly, Copper Mountain's claimed failure to mark the cornice may have been a "but for" cause of the accident, but it does not follow that the cornice itself was not another cause. The language of the SSA does not restrict the Act's application to claims resulting "solely" from the inherent dangers of skiing, and Colorado courts recognize that there may be multiple "but for" causes of an injury. <u>See</u> <u>Leppke v. Segura</u>, 632 P.2d 1057, 1059 (Colo. App. 1981) (holding that there may be multiple "but for" causes). Because skiing off of a cornice is an inherent danger of skiing, and was one of the "but for" causes of Kumar's injuries, his claim is precluded by the SSA.

---

dangers or conditions which are an integral part of the sport of skiing") <u>with</u> § 33-44-103(3.5) (providing the present, broader definition).

Kumar's assumed duty argument fails for a more fundamental reason. In revising the SSA in 2004, the Colorado General Assembly recognized "the dangers that inhere in the sport of skiing, regardless of any and all reasonable safety measures which can be employed." § 33-44-102. A ski area operator is negligent for failure to warn only when it violates the specific and detailed warning requirements of the SSA as set forth in §§ 33-44-106 and 107. And as we discuss below, Celebrity Cornice did not qualify as a feature requiring warning signs under those sections. See § II.C, infra.

Consistent with the legislature's recognition of the dangers of skiing and its goal of clearly defining a ski area's potential liability, the language of § 33-44-103(3.5) is clear: "inherent dangers and risks of skiing" should be read to include accidents like Kumar's, in which a skier is injured skiing over a feature that was not subject to the SSA's explicit signage requirements. Although the SSA provides that additional signs "may be posted at the discretion of the ski area operator," § 33-44-106(g)(2), such signage is optional. Contrary to Kumar's claim, a ski area operator has no assumed duty to post such discretionary signs.

## C

Kumar's second claimed basis for liability is negligence per se premised upon Copper Mountain's failure to mark Celebrity Cornice as a "specified freestyle terrain area." We review issues of statutory construction de novo, United States v. Oberle, 136 F.3d 1414, 1423 (10th Cir. 1998), and begin by examining the plain language of the statute, Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997). "The plainness or

-6-

ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Id. at 341.

The SSA requires ski area operators to post signs marking both "extreme terrain" and "specified freestyle terrain areas." § 33-44-107(2)(d). "'Freestyle terrain' includes, but is not limited to, terrain parks and terrain park features such as jumps, rails, fun boxes, and all other constructed and natural features, half-pipes, quarter-pipes, and freestyle-bump terrain." § 33-44-103(3.3).

Even were Celebrity Cornice to qualify as freestyle terrain, it would not qualify as a "specified freestyle terrain area." The SSA distinguishes between "terrain" and "terrain areas." This distinction is evident in § 33-44-107(2)(d) which requires signage at the "commonly used access" for the "ski area's extreme terrain." In contrast, § 33-44-107(5) mandates that signs marking "specified freestyle terrain areas" need only be posted "at or near the beginning of each trail or slope." Thus, extreme terrain features must be marked individually at commonly used access points, but only the beginning of each slope leading to a "specified freestyle terrain area" need be posted with a sign. Consistent with the plain meaning of the word "area," the SSA recognizes that a terrain area is larger than a single terrain feature.

Moreover, Celebrity Cornice was not "specified." See § 33-44-107(2)(d) (referring to "specified freestyle terrain areas"). The SSA does not state who is responsible for specifying a "freestyle terrain area." We can imagine three possible

-7-

parties who might "specify" that an area is a freestyle terrain area: the legislature, skiers, or the ski area operator.

Although § 33-44-103 lists features that qualify as "freestyle terrain," the SSA does not establish which parts of a ski resort qualify as "freestyle terrain areas." In light of this statutory silence, contrasted with the detailed signage requirements elsewhere in the statute, see §§ 33-44-106 and 107, it does not appear that the Colorado General Assembly intended to "specify" freestyle terrain areas.

The second possibility is that skiers might specify "freestyle terrain areas." This is the option favored by Kumar, who contends that because the cornice was informally nicknamed by guests and employees at Copper Mountain, the cornice was "specified." Yet such a reading of § 33-44-107(d) leads to the absurd result that individual skiers may define the extent of a ski area operator's liability merely by nicknaming some part of a mountain. See State v. Nieto, 993 P.2d 493, 501 (Colo. 2000) ("[I]n construing a statute, we must seek to avoid an interpretation that leads to an absurd result."). Such a reading would disserve the Colorado General Assembly's stated intent of clarifying "the rights and liabilities existing between the skier and the ski area operator and between skiers." § 33-44-102. Kumar's proffered interpretation of "specified freestyle terrain area" would allow individual skiers to define the scope of ski area operators' potential liabilities and thus render ski area operators' responsibilities more uncertain, rather than less.

The third possibility is that ski area operators themselves might specify which sections of their slopes constitute "freestyle terrain areas." Under this reading, the ski

area operator must mark those areas of its slopes which contain "freestyle terrain" and which are designated for freestyle use, such as terrain parks and aggregations of terrain park features. See C.R.S.A. § 33-44-103(3.3). This reading is consistent with both the text and the purpose of the SSA. Having eliminated the other possible entities that could be responsible for specifying freestyle terrain areas, we conclude that specification by ski area operators is the most plausible interpretation of this provision. And because Celebrity Cornice was not specified by Copper Mountain as a freestyle terrain area, Kumar's negligence per se claim fails.

**D**

In conclusion, we emphasize what this order and judgment does not decide. We do not decide whether Celebrity Cornice qualifies as "extreme terrain." Although Kumar advanced this claim below, he does not appeal this issue. We do not opine as to the liability of a ski area operator based upon the height of a feature, such as a cornice. And we do not decide whether a ski area operator is liable under the SSA for negligent slope design. We decide only that: (1) the SSA, not the common law, controls this case and thus there is no cause of action under the assumed duty doctrine; and (2) Celebrity Cornice does not qualify as a "specified freestyle terrain area."

## III

We **AFFIRM** the district court's grant of summary judgment.

Entered for the Court


Carlos F. Lucero
Circuit Judge