Opinion by JUDGE FOX
¶ 1 This case arises from the death of Christopher H. Norris, who was killed by an avalanche while skiing at Winter Park Resort. Mr. Norris's wife, Salynda E. Fleury, individually and on behalf of her minor children Indyka and Sage Norris, sued defendant, IntraWest Winter Park Operations Corporation (IntraWest), the operator of Winter Park Resort. The district court granted IntraWest's motion for determination of law and judgment on the pleadings, *83 ruling that an avalanche is an inherent danger or risk of skiing under the Ski Safety Act, § 33-44-101 to - 114, C.R.S.2013 (the Act), and therefore IntraWest cannot be liable for Mr. Norris's death. We agree and affirm.
I. Background and Procedural History
¶ 2 On January 22, 2012, Mr. Norris was fatally injured in an avalanche while skiing inbounds at Winter Park Resort on a run known as Trestle Trees/Topher's Trees (Trestle Trees). Ms. Fleury asserted claims for negligence and wrongful death. Ms. Fleury claimed that IntraWest knew or should have known that an avalanche was likely to occur on Trestle Trees on January 22, 2012, and that IntraWest's failure to warn skiers about the likelihood of avalanches or failure to close Trestle Trees caused Mr. Norris's death. Ms. Fleury sought an unspecified amount of economic and noneconomic damages, and punitive damages for IntraWest's alleged willful and wanton conduct.
¶ 3 IntraWest moved for a determination of law under C.R.C.P. 56(h), and a judgment on the pleadings under C.R.C.P. 12(c), asserting immunity from liability because an avalanche is an inherent danger or risk of skiing under the Act. See §§ 33-44-103(3.5) (defining inherent dangers and risks of skiing) and 33-44-112 (granting immunity when an injury results from an inherent danger or risk of skiing). IntraWest also asserted that the Act caps the maximum amount of compensatory damages for derivative claims at $250,000, present value. See § 33-44-113.
¶ 4 The court held that the avalanche that killed Mr. Norris was an inherent risk of skiing, and thus IntraWest was not liable for his death. The court dismissed Ms. Fleury's claims with prejudice, but opined that were Ms. Fleury allowed to proceed with her claims, compensatory damages would be capped at $250,000, individually and on behalf of her minor children.
II. Liability Under the Act
¶ 5 Ms. Fleury contends that the district court erred in determining that the avalanche was an inherent risk of skiing under § 33-44-103(3.5). We disagree and therefore affirm.
A. Standard of Review
¶ 6 We review a district court's order granting a judgment on the pleadings under C.R.C.P. 12(c) de novo. In re Estate of Johnson, 2012 COA 209, ¶ 18, 304 P.3d 614. We likewise review a district court's determination of a question of law under C.R.C.P. 56(h) de novo. Henisse v. First Transit, Inc., 247 P.3d 577, 579 (Colo.2011). An order deciding a question of law is proper "[i]f there is no genuine issue of any material fact necessary for the determination of the question of law." C.R.C.P. 56(h). The nonmoving party is entitled to all favorable inferences. Henisse, 247 P.3d at 579.
¶ 7 Statutory interpretation, the matter we must address here, presents a question of law and is also subject to de novo review. Stamp v. Vail Corp., 172 P.3d 437, 442 (Colo.2007). When the language of the statute is clear and unambiguous, we give effect to its plain and ordinary meaning. Id. Likewise, when the General Assembly defines a term, we must apply that definition. People v. Swain, 959 P.2d 426, 429 (Colo.1998) ; In re M.D.E., 2013 COA 13, ¶ 10, 297 P.3d 1058. However, when the language is ambiguous-that is, reasonably susceptible of multiple meanings-we may consider extrinsic indications of the General Assembly's intent. Stamp, 172 P.3d at 442 ; In re M.D.E., ¶ 10.
B. Applicable Law
¶ 8 In adopting the Act, the General Assembly recognized that there are dangers inherent to the sport of skiing, regardless of the safety measures that may be employed by ski area operators. § 33-44-102. The Act's stated purposes are to "define the legal responsibilities of ski area operators and their agents and employees; to define the responsibilities of skiers using such ski areas; and to define the rights and liabilities existing between the skier and the ski area operator and between skiers." Id. Consistent with these purposes, the Act grants ski area operators immunity from claims for injuries *84 resulting from any of the inherent dangers and risks of skiing. § 33-44-112. Accordingly, a skier may not recover if his injury-or death, see Stamp, 172 P.3d at 447 -is the result of an inherent danger or risk of skiing.
C. Avalanches as Inherent Dangers or Risks of Skiing
¶ 9 Ms. Fleury contends that because an "avalanche" is not specifically listed as an inherent danger or risk of skiing in § 33-44-103(3.5), the General Assembly did not intend that it should be so regarded for purposes of the Act. Relying on Turbyne v. People, 151 P.3d 563, 567 (Colo.2007) (holding that a court cannot add words to a statute), and Lunsford v. Western States Life Insurance, 908 P.2d 79, 84 (Colo.1995) (where the legislature has spoken with exactitude, a court must construe the statute to mean that inclusion or specification of a particular set of conditions necessarily excludes others), she argues that the definition of "inherent dangers and risks of skiing" is a finite list. According to Ms. Fleury, construing the definition to include avalanches would expand the scope of a ski area operator's immunity under the Act in contravention of the intent of the General Assembly. We disagree, for two reasons.
1. Plain Meaning of the Act
¶ 10 First, giving effect to the plain meanings of the words in the Act, we conclude that an avalanche fits the definition of inherent dangers and risks of skiing. As relevant here, the inherent dangers and risks of skiing include:
those dangers or conditions that are part of the sport of skiing, including changing weather conditions; snow conditions as they exist or may change, such as ice, hard pack, powder, packed powder, wind pack, corn, crust, slush, cut-up snow, and machine-made snow; [and] variations in steepness or terrain, whether natural or as a result of slope design[.]
§ 33-44-103(3.5). We must apply this definition as written. Swain, 959 P.2d at 429.
¶ 11 The operative definition contains the word "including" before listing nonexclusive examples. Because the General Assembly typically uses "include" as a word of extension or enlargement, listing examples in a statutory definition does not restrict the term's meaning. See S. Ute Indian Tribe v. King Consol. Ditch Co., 250 P.3d 1226, 1233 n. 4 (Colo.2011) ; see also Lyman v. Town of Bow Mar, 188 Colo. 216, 222, 533 P.2d 1129, 1133 (1975) (stating that the word " 'include' " in a statute ordinarily signifies extension or enlargement, and it is not synonymous with the word " 'mean' "). The list is illustrative and not, as Ms. Fleury argues, confined to the identified dangers.
¶ 12 In Kumar v. Copper Mountain, Inc., the Tenth Circuit held that a cornice, which is not listed in the Act, is an inherent danger or risk of skiing. 431 Fed.Appx. 736, 738 (10th Cir.2011). This cornice regularly formed at the intersection of two ski runs, but the resort did not post any warning signs alerting skiers to its existence or the potential danger of the steep drop-off at the edge. Id. at 737. The injuries in Kumar occurred when the skier did not see the edge of the cornice, and he unintentionally skied off of that edge. Id. The Tenth Circuit concluded that a cornice falls within the statutory definition of an inherent danger or risk of skiing either "within the section relating to snow conditions as they exist or change, or the provision covering variations in steepness or terrain." Id. at 738.
¶ 13 Similar to a cornice, an avalanche-"a large mass of snow, ice, earth, rock, or other material in swift motion down a mountainside or over a precipice," see Webster's Third New International Dictionary Unabridged 150 (2002); see also Union Ins. Co. v. Houtz, 883 P.2d 1057, 1068 (Colo.1994) (an appellate court may consult recognized dictionaries to determine the ordinary meanings of words) - fits one or more of the statutory examples of inherent dangers or risks of skiing.
¶ 14 Ms. Fleury's complaint alleges that the avalanche that killed Mr. Norris was caused by new snowfall on top of a weak and unstable snowpack on a north-facing slope of greater than thirty degrees. Thus, even pursuant to Ms. Fleury's own allegations, the avalanche resulted from changing snow conditions (new snowfall) and existing snow conditions *85 (weak and unstable snowpack) caused by weather and slope steepness (slope exceeding thirty degrees).
¶ 15 An avalanche falls neatly into the examples of dangers in the Act, and comports with the common understanding of a "danger": a "[p]eril; exposure to harm, loss, pain, or other negative result." Black's Law Dictionary 450 (9th ed.2009); see also Union Ins. Co., 883 P.2d at 1068. An avalanche is itself a danger resulting from certain conditions of snow, and the degree of danger is affected by "changing weather conditions" across "variations of steepness and terrain." See Mannhard v. Clear Creek Skiing Corp., 682 P.2d 64, 66 (Colo.App.1983) (characterizing avalanche danger as arising from dangerous natural snow conditions).
¶ 16 We thus construe the definition of inherent dangers and risks of skiing in § 33-44-103(3.5) as written to include an avalanche. See Swain, 959 P.2d at 429 ; Kumar, 431 Fed.Appx. at 738. This construction is fully consistent with the legislative recognition that, regardless of all reasonable safety measures a ski area operator may employ, skiing is fraught with dangers. See § 33-44-102; see also Mannhard, 682 P.2d at 66.
2. Legislative Intent
¶ 17 Since its enactment in 1979, the General Assembly has amended the Act to increasingly limit a ski area operator's liability for skiing-related injuries.[1] In 1990, the General Assembly added section 112, which immunizes ski area operators from liability for a skier's injury resulting from any of the inherent dangers and risks of skiing. See Ch. 256, sec. 7, § 33-44-112, 1990 Colo. Sess. Laws 1543; see also Stamp, 172 P.3d at 443-44 (Colo.2007) ("By narrowly defining the claims that can be brought by injured skiers against ski area operators and by limiting the recovery in successful skiers' claims, the 1990 amendments broaden the [Act's] protection of ski area operators.").
¶ 18 In 2004, the General Assembly changed the definition of inherent dangers and risks of skiing from "dangers or conditions which are an integral part of the sport of skiing" to "dangers or conditions that are part of the sport of skiing," thereby broadening the types of inherent risks covered by the Act and decreasing the liability of ski area operators. See Ch. 341, sec. 1, § 33-44-103(3.5), 2004 Colo. Sess. Laws. 1393. Removing the words "an integral" effectively abrogated the part of the supreme court's holding in Graven v. Vail Associates, 909 P.2d 514, 520 (Colo.1995), that required courts to determine if a danger encountered on the ski slopes was "integral to the sport,"[2] and only granted immunity for such dangers.
¶ 19 We conclude that the inclusion of an avalanche as an inherent danger or risk of skiing is consistent with the General Assembly's intent, as evidenced by the evolution of the Act.
D. Duty to Warn
¶ 20 We also reject Ms. Fleury's argument that IntraWest is liable for Mr. Norris's death because it failed to close Trestle Trees-and failed to post closure signage-or warn skiers about the avalanche danger on January 22, 2012.
¶ 21 The Act prescribes the rights and responsibilities of ski area operators, see § 33-44-102, and two sections of the Act require sign placement throughout the ski area. Section 33-44-106 requires specific signs at the loading and unloading positions of ski lifts or tramways, and section 33-44-107 requires signs noting the difficulty of *86 each slope, the entry point of extreme and freestyle terrain, closed trails or slopes, ski area boundaries, and man-made structures along the slopes. Significantly, the Act's signage requirements relate to man-made obstacles, ski area boundaries, and the steepness of the terrain. An avalanche is neither man-made nor a constant feature on the terrain.
¶ 22 Further, the General Assembly's 2004 amendments removed a part of § 33-44-107(2)(d) that previously required ski area operators to post a sign notifying skiers of "danger areas," which exclude "areas presenting inherent dangers and risks of skiing." See Ch. 341, sec. 2, § 33-44-107(2)(d), 2004 Colo. Sess. Laws. 1393. This change further evinces that the General Assembly intended to broaden the immunity of ski areas by decreasing their obligations and responsibilities.
¶ 23 Again, Kumar, 431 Fed.Appx. 736, is instructive. It held that Copper Mountain was not required to warn skiers about the cornice because "[a] ski area operator is negligent for failure to warn only when it violates the specific and detailed warning requirements of [the Act] as set forth in §§ 33-44-106 and -107." Id. at 739. Additionally, Kumar held that inherent dangers and risks of skiing include skiing over features, like cornices, that are not subject to the statute's signage requirements. Id.
¶ 24 We see nothing in the Act to support Ms. Fleury's interpretation that IntraWest was required to close Trestle Trees or post warning signs, notwithstanding the fact that IntraWest may have had the ability to do so. The Act enumerates specific sign requirements and does not require ski area operators to warn skiers of possible avalanches or to close slopes with avalanche danger. Therefore, IntraWest was under no duty to post a warning sign at, or to close, Trestle Trees on January 22, 2012. See Kumar, 431 Fed.Appx. at 739.
¶ 25 As discussed above, the General Assembly has increasingly broadened ski area operators's immunity for skier injuries. While Mr. Norris's death was tragic, IntraWest is not liable under the Act. If the General Assembly wishes to hold ski areas accountable for avalanche-related injuries or deaths, it should amend the Act.
¶ 26 We thus conclude that the district court properly dismissed Ms. Fleury's claims against IntraWest.
III. Recovery Limits
¶ 27 Because we find no liability, we decline to address Ms. Fleury's claim that the district court erred in determining that her recovery is statutorily capped at $250,000.
¶ 28 The judgment is affirmed.
JUDGE NAVARRO concurs.
JUDGE J. JONES dissents.

It is true that statutes granting immunity are in derogation of the common law and must be strictly construed. See State v. Nieto, 993 P.2d 493, 506 (Colo.2000). It is equally true, however, that we must assume that General Assembly knew this law when it increasingly broadened ski area operators' immunity. See Smith v. Miller, 153 Colo. 35, 39, 384 P.2d 738, 740 (1963) ("[I]t must be assumed that the legislature acted with full knowledge of relevant constitutional provisions, inherent judicial powers existing, and of previous legislation and decisional law on the subject[.]").

Following Graven and construing the Act's definition of "inherent dangers and risks of skiing," Rowan v. Vail Holdings, Inc., 31 F.Supp.2d 889, 903 (D.Colo.1998), defined "integral to the sport" as those risks that are so integrally related to skiing that the sport cannot be undertaken without confronting those risks. Id.