**FREEDOM NEWSPAPERS, INC., d/b/a Colorado Springs Gazette Telegraph and Pam Zubeck, Plaintiffs–Appellees,**

v.

**Phillip H. TOLLEFSON, Director of Utilities for Colorado Springs and Ann E. Nichols, Director of Finance and Management Services for Colorado Springs Utilities, Defendants–Appellants.**

No. 97CA0792.

Colorado Court of Appeals, Division V.

July 9, 1998.

Faegre & Benson, L.L.P., Thomas B. Kelley and Steven D. Zansberg, Denver, for Plaintiffs–Appellees.

James G. Colvin, II, City Attorney, El Paso City Attorney's Office, Colorado Springs, for Defendants–Appellants.

Patricia K. Kelly, Senior Utilities Attorney, Shane M. White, Senior Litigation Attorney,

Office of the City Attorney, Colorado Springs, for Defendants–Appellants.

Opinion by Judge TAUBMAN.

Defendants, Phillip H. Tollefson and Ann E. Nichols (custodians), appeal from the summary judgment entered against defendants and in favor of plaintiffs, Freedom Newspapers, Inc., d/b/a Colorado Springs Gazette Telegraph, and Pam Zubeck, ordering the release of certain records pursuant to the Colorado Open Records Act (ORA), 24–72–201, et seq., C.R.S.1997. We affirm.

The City of Colorado Springs owns and operates Colorado Springs Utilities (CSU). Tollefson is its director and Nichols is its director of finance and management services. In 1995, the City implemented the Transitional Employment Program (TEP) as part of a new organizational structure designed to help CSU succeed in the face of industry competition. TEP provided an opportunity for employees of CSU whose positions had been identified as "surplus" to retire early and receive severance payments and benefits. The program was extended in 1996 to those employees who were either unable or unwilling to make significant changes in their working style as deemed necessary for CSU's transition into the competitive environment.

Plaintiffs requested the opportunity to inspect and copy all records reflecting the amount of payments made pursuant to TEP. Custodians provided plaintiffs information as to the number of former employees who had received payments through TEP, the total amounts paid, the total benefit payments, and the number of months for which payment was provided to each TEP participant. However, they refused to release the names of TEP participants and the individual amounts paid to them, claiming that such information was statutorily exempted from disclosure under ORA.

Following that refusal, plaintiffs initiated this action, and, on motion for summary judgment, the trial court ruled as a matter of law that custodians had to release the TEP records at issue here. Its decision was stayed pending this appeal.

Summary judgment is a drastic remedy and should be granted only upon a clear showing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988). Review of a judgment granting a motion for summary judgment is *de novo*. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251 (Colo.1995).

### I. Personnel Files

Custodians first contend that the trial court erred as a matter of law in concluding that the names of TEP participants and the individual amounts paid to them were not exempt from disclosure under ORA. More specifically, custodians contend that such information is not disclosable because it falls within the exception for information contained in employee "personnel files." We disagree.

### A. Colorado Open Records Act

■ A court's primary task in construing a statute is to give effect to the intent of the General Assembly. Thus, courts should interpret statutory terms in accordance with their plain and ordinary meaning. *Thurman v. Tafoya*, 895 P.2d 1050 (Colo.1995). Additionally, statutes must be construed as a whole. Therefore, when interpreting a statute, we must give consistent, harmonious, and sensible effect to all of its parts. A construction that leads to an absurd result will not be followed. *City of Grand Junction v. Sisneros*, 957 P.2d 1026 (Colo.1998).

■ Likewise, the rule of consistent usage requires that, when the General Assembly uses the same words or phrases in different parts of a statute, then, in the absence of any manifest indication to the contrary, the meaning attributed to the words or phrases in one part of the statute should be ascribed to the same words or phrases found elsewhere in the statute. *Colorado Common Cause v. Meyer*, 758 P.2d 153 (Colo.1988).

■ ORA contains a broad legislative declaration that all public records shall be open for inspection unless excepted by the

statute itself or specifically by other law. *Denver Publishing Co. v. Dreyfus,* 184 Colo. 288, 520 P.2d 104 (1974). Exceptions to ORA should be narrowly construed. However, a court must uphold a record custodian's denial of inspection of documents from an employee's personnel file, unless the denial was arbitrary and capricious. *Denver Post Corp. v. University of Colorado,* 739 P.2d 874 (Colo.App.1987).

Section 24–72–204(3)(a)(II)(A), C.R.S.1997, exempts from disclosure information contained in "personnel files." Further, the statute provides in pertinent part that:

> 'Personnel files' means and includes home addresses, telephone numbers, financial information, and other information maintained because of the employer-employee relationship, and other documents specifically exempt from disclosure under this part 2 or any other provision of law.

Section 24–72–202(4.5), C.R.S.1997.

In addition, § 24–72–202(4.5) provides that:

> 'Personnel files' does not include applications of past or current employees, employment agreements, any amount paid or benefit provided incident to termination of employment, performance ratings, final sabbatical reports ... or any compensation, including expense allowances and benefits, paid to employees by the state, its agencies, institutions, or political subdivisions.

■ The word "includes" is generally used as a term of extension or enlargement when used in a statutory definition. *See Colorado Common Cause v. Meyer, supra.* Similarly, "any" is a term of expansion without restriction or limitation. See *Obert v. Colorado Department of Social Services,* 766 P.2d 1186 (Colo.1989).

■ The plain language of the statute, as quoted above, exempts from the definition of personnel files "any amount paid or benefit provided incident to termination of employment." Thus, by its plain language, severance payments received pursuant to TEP are not part of an employee's personnel file and, therefore, are subject to disclosure.

■ Custodians argue, notwithstanding the above, that the word "names" is not referred to in that part of the statute and that the plain language of the statute does not require disclosure of the names of employees participating in TEP. They interpret the phrase "does not include," in the above-quoted language, as a phrase of limitation. Thus, they read that portion of the statute to exclude from the definition of "personnel files" only those items expressly mentioned.

Conversely, custodians interpret the word "includes" in the definition of "personnel files" as a term of enlargement and, therefore, read that portion of the definition as encompassing something more than those terms expressly mentioned. According to custodians' construction, the name of a public employee, an item contained in a personnel file but not expressly mentioned within the statute, is included in the definition of "personnel files." Accordingly, custodians argue that the names of TEP participants are exempt from disclosure pursuant to § 24–72–204(3)(a)(III)(A) and § 24–72–202(4.5). Consistent therewith, custodians maintain that release of the aggregate information previously provided to plaintiffs is sufficient to comply with the requirements of ORA. More specific information, custodians argue, would reveal the identities of the TEP participants and, therefore, violate ORA. We disagree.

We conclude that custodians cannot avoid the disclosure requirement contained in §§ 24–72–204(3)(a)(II)(A) and 24–72–202(4.5) merely by releasing to plaintiffs the total amounts paid to employees pursuant to TEP. Such a reading is inconsistent with the plain language of the statute. *See Obert v. Colorado Department of Social Services, supra.*

Further, contrary to custodians' contention, there is no basis for construing the term "include," when phrased in the negative, differently from the term when used otherwise. *See Colorado Common Cause v. Meyer, supra.*

A construction which gives all terms of the statute consistent, harmonious, and sensible effect requires that the public entity disclose any amount paid incident to termination of public employment, regardless of whether such information would reveal the employee's

identity. Accordingly, we do not read the statute to exempt from disclosure an employee's name simply because it is an item of information contained in a personnel file. *See Denver Publishing Co. v. University of Colorado,* 812 P.2d 682 (Colo.App.1990) (unreasonable for public institution to restrict access to information by merely placing documents in personnel file; a legitimate expectation of privacy must be present).

This construction is consistent with *Denver Post Corp. v. University of Colorado,* in that it narrowly construes an exception to ORA.

Thus, we conclude, as did the trial court, that the names of TEP participants are subject to disclosure under ORA.

### B. Freedom of Information Act

■ Relying on *Denver Post Corp. v. University of Colorado, supra,* custodians similarly argue that because the drafters of ORA studied and quoted from the federal Freedom of Information Act (FOIA) in their report to the General Assembly, we should, in construing ORA, look to federal law interpreting analogous provisions of FOIA. Further, custodians argue that, pursuant to *Denver Post Corp.,* anything contained in a personnel file not specifically subject to disclosure is entitled to the protection of nondisclosure. In our view, custodians' reliance on *Denver Post Corp.* is misplaced.

In *Denver Post Corp.,* a division of this court concluded, based on the General Assembly's modification of the analogous provision of FOIA, that the prior version of § 24-72-204(3)(a)(II) contained "a blanket protection for all personnel files." *Denver Post Corp. v. University of Colorado, supra,* 739 P.2d at 878. Significantly, the *Denver Post Corp.* court, emphasizing the General Assembly's use of different language in ORA, explicitly rejected a construction of § 24-72-204(3)(a)(II) which would parallel the interpretation of its federal counterpart. Thus, we decline to consider federal case law interpreting FOIA as being persuasive here. *See Colonial Bank v. Colorado Financial Services Board,* 961 P.2d 579 (Colo.App.1998)(federal law not persuasive where Colorado statute and federal statute differ significantly).

Further, although the *Denver Post Corp.* court did conclude that the General Assembly intended to create a blanket protection from disclosure for all personnel files, such protection was subject to the specific exceptions for which it determined there was an overriding public interest in disclosure. After *Denver Post Corp.* was decided, the General Assembly amended the definition of personnel files explicitly to exempt from that definition any amounts paid or benefit provided incident to termination of employment. *See* § 24-72-202(4.5). Thus, contrary to the custodians' contention, we conclude that the trial court's construction of "personnel files" is consistent with the court's ruling in *Denver Post Corp.*

Accordingly, we conclude that the trial court did not err when it determined that the names and individual severance payments were not part of the exclusion for "personnel files," and therefore, those matters are subject to inspection.

### II. Substantial Injury

Custodians next contend that the trial court erred in concluding that, even if the names of the public employees who participated in TEP must otherwise be disclosed, such disclosure is not permitted because, pursuant to § 24-72-204(6)(a), C.R.S.1997, it would cause substantial injury to the public interest. Specifically, custodians contend that disclosure would cause substantial injury to the public interest in three ways: (1) by unduly interfering with the privacy rights of public employees; (2) by unduly interfering with their liberty interests; and (3) by chilling employee participation in TEP, ultimately creating a competitive disadvantage for CSU. We disagree with each of these contentions.

Section 24-72-204(6)(a) provides that, if, in the opinion of the records custodian, disclosure of the record would do substantial injury to the public interest, notwithstanding the fact that the record might otherwise be available for public inspection, the custodian may apply to the court to restrict public access to the document.

The statute thus indicates an intent to protect from disclosure public records which are otherwise available for inspection under ORA where harm to the public interest would result. This catch-all exemption is to be used only in those extraordinary situations which the General Assembly could not have identified in advance. Consistent therewith, the custodian has the burden to prove that disclosure of the information would substantially harm the public interest. *Zubeck v. El Paso County Retirement Plan,* 961 P.2d 597 (Colo.App.1998).

### A. Privacy

The protection for personnel files is based on a concern for the individual's right of privacy, and it remains the duty of the courts to ensure that documents as to which this protection is claimed actually do in fact implicate this right. *Denver Post Corp. v. University of Colorado, supra.*

In determining whether disclosure of the requested documents would do substantial injury to the public interest by invading an employee's constitutional right to privacy, the court must consider: (1) whether the individual has a legitimate expectation of nondisclosure; (2) whether there is a compelling public interest in access to the information; and (3) where the public interest compels disclosure of otherwise protected information, how disclosure may occur in a manner least intrusive with respect to the individual's right of privacy. *Denver Post Corp. v. University of Colorado, supra.*

An employee has at least a minimal privacy interest in his or her employment history and job performance evaluations, and further, public employees have a narrower expectation of privacy than other citizens. *See Denver Post Corp. v. University of Colorado, supra.*

Here, the trial court engaged in the necessary inquiry with respect to custodians' privacy contention and concluded that disclosure of the information sought would not cause substantial injury to the public interest.

First, as the trial court found, custodians have not established that the information sought by the plaintiffs, specifically the names and individual amounts paid to employees pursuant to TEP, is so intimate, personal, or sensitive that disclosure of such information would be offensive and objectionable to a reasonable person. *See Martinelli v. District Court,* 199 Colo. 163, 612 P.2d 1083 (1980). *Cf. Robert C. Ozer, P.C. v. Borquez,* 940 P.2d 371 (Colo.1997).

Second, both ORA and TEP recognize the compelling public interest in access to information. ORA establishes a strong presumption in favor of public disclosure, especially when the expenditure of public funds is involved. *See Denver Publishing, Co. v. University of Colorado, supra.* The TEP report itself acknowledges as a critical component of the program the "widespread dissemination of the plan, its details, and administration," thereby recognizing a diminished privacy interest in such disclosure. Only by disclosure of the specific amounts paid to individual employees can the public determine that the program has been administered fairly and consistent with TEP guidelines. Aggregate data does not satisfy the compelling public interest in access to this information.

Third, the release of the names of employees and individual amounts paid does not unduly interfere with the employees' right to privacy. *See Martinelli v. District Court, supra.*

Thus, we conclude that the trial court gave proper consideration to the privacy interests implicated in disclosure when it determined that the custodians had failed to establish that dissemination of the information would do substantial injury to the public interest.

### B. Liberty

Whether documents otherwise subject to disclosure under ORA are exempted because disclosure would cause substantial injury to the public interest by invading a constitutionally protected liberty interest is a question of first impression.

A public employee has a liberty interest in his or her good name, reputation, honor, and integrity. However, that interest, standing alone, is not entitled to constitution-

al protection. Rather, an employee must allege both an injury to his or her reputation and an impairment of some more tangible interest, for example, an employee's interest in continued or future employment. *See Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Perez v. Denver Public Schools,* 919 P.2d 960 (Colo.App.1996).

◼ Much like an individual's constitutional right to privacy, an individual's right to liberty is not absolute but must be analyzed on a case-by-case basis. Therefore, the courts must engage in a balancing process to determine whether the individual's liberty interest outweighs the public interest in dissemination of information. *See Paul v. Davis, supra; Martinelli v. District Court, supra.* We conclude that the three part balancing test set forth in *Denver Post Corp.* is the proper analytical framework for determining whether a disclosure would do substantial injury to the public interest by invading an individual's constitutionally protected liberty interest.

Thus, the trial court must consider: (1) whether disclosure of the information would unduly interfere with the individual's liberty interest; (2) whether there is a compelling public interest in access to the information; and (3) where the public interest compels disclosure of otherwise protected information, how disclosure may occur in a manner least intrusive with respect to the individual's liberty right. *See Denver Post Corp. v. University of Colorado, supra.*

A division of this court recently adopted a similar test to determine whether a plaintiff has stated a liberty interest claim in continued employment: the alleged statements by the public employer must impugn the good name, reputation, honor, or integrity of the employee; the statements must be false; the statements must occur in the course of terminating the employee or must foreclose other employment opportunities; and the statements must be published. *Hartman v. Middleton,* —— P.2d —— (Colo.App. No. 97CA1331, June 11, 1998).

◼ Even if we were to assume that the articles published in the Colorado Springs Gazette Telegraph contained information that was damaging to the reputation of TEP participants, neither the articles nor the affidavits submitted show how the employees' professional status would be negatively affected or in what manner future employment opportunities may be foreclosed. The trial court found that the affidavits submitted by custodians were conclusory and speculative and, thus, do not establish that disclosure would unduly burden the individual interest in reputation within the employment context. *See Perez v. Denver Public Schools, supra.* We further note that the reputational harm alleged here is *de minimis* to those employees who participated in TEP because their jobs were "surplused."

We therefore conclude that, consistent with the public policy favoring disclosure of public documents pursuant to ORA, there is a compelling interest in disclosure of the names and individual amounts paid pursuant to TEP.

Similarly, we conclude that the release of the names of employees and individual amounts paid does not unduly interfere with the employees' protected liberty interest.

### C. Competitive Interest

◼ Custodians next argue that disclosure is contrary to the public interest because disclosure of the names of the TEP participants would prevent CSU from using TEP as an effective management tool, ultimately resulting in increased rates to taxpayers. However, the record reveals that custodians have not established the necessary factual basis to succeed on this claim.

As noted, the affidavits submitted by custodians were conclusory and speculative. Nothing else in the record sets forth a factual basis to establish that CSU employees would refuse to participate in TEP if their names were subject to disclosure. Moreover, the public's right to know how public funds are spent is paramount in weighing custodians' contention that disclosure may chill CSU's ability to continue use of TEP, and thereby remain competitive in the future. *See Denver Publishing Co. v. University of Colorado, supra.*

**1158**

We conclude that the trial court properly determined that the custodians did not meet their burden of proving that disclosure of the names of TEP participants would cause substantial injury to the public interest.

### III. "Enterprise" Under TABOR Amendment

The custodians contend that, when determining that disclosure of the names of TEP participants would cause substantial injury to the public interest, the trial court erred by not considering the full competitive context in which CSU operates: Relying on Colo. Const. art. X, § 20, commonly referred to as the TABOR amendment, custodians argue that CSU is an "enterprise" and, therefore, must operate on business terms, free from the requirements of ORA.

Custodians' reliance on the TABOR amendment is misplaced. That amendment exempts government enterprises from certain taxing, spending, and debt limitations, but does not provide an exemption from any obligation under ORA. *See* Colo. Const. art. X, § 20. *See also Freedom Newspapers, Inc. v. Denver & Rio Grande Western R.R. Co.,* 731 P.2d 740 (Colo.App.1986) (declining to distinguish between proprietary and governmental functions under ORA; documents are subject to disclosure under ORA unless they fit within one of the specific exceptions).

In sum, we conclude that the trial court did not err in concluding that the names of TEP participants and the individual amounts paid are subject to disclosure pursuant to ORA.

Judgment affirmed.

ROTHENBERG and VOGT, JJ., concur.